## COLFAX MOUNTAIN FRUIT CO. v. SOUTHERN PAC. CO.*

### Sac. No. 87; October 24, 1896.

#### 46 Pac. 668.

**Connecting Carrier—Limitation of Liability.**—Under Civil Code, section 2201, declaring that the liability of a carrier who accepts freight for a place beyond his route ceases on delivery to a connecting line, "unless he stipulates otherwise," a provision in a freight contract that the carrier's responsibility shall cease at the connecting point is not rendered ineffective by a further stipulation for through passenger train service.[1]

**Connecting Carriers—Limitation of Liability.**—There being no repugnancy between the provision limiting the carrier's liability to its own line and the stipulation for through passenger train service, the fact that the first is printed, while the last is in writing, is immaterial in construing the contract.

**Connecting Carriers—Limitation of Liability.**—Where a railroad company receives freight for shipment under an agreement to forward it to its destination, and the stipulation that its liability as carrier shall cease on delivery of the goods to the first connecting line, the contract also providing for "passenger service through," the duty of the company as forwarding agent continues till the goods arrive at their ultimate destination, and it is therefore liable for any delay caused by its failure to notify each successive connecting road of the conditions of the contract in respect to the manner of transportation.[2]

**Connecting Carriers—Damages for Delay.**—In an Action by the Shipper against the contracting carrier for damages caused by such

---

*For subsequent opinion in bank, see 118 Cal. 648, 40 L. R. A. 78, 50 Pac. 775.

[1] Cited in the note in 106 Am. St. Rep. 606, on the liability of an initial carrier for the torts or negligence of connecting lines.

[2] Cited with approval in Weaver v. Southern Ry. Co., 135 Mo. App. 216, 115 S. W. 502, when the court said: "A carrier is acquitted of its obligation as insurer arising from the contract of affreightment in such circumstances only when it is made to appear that the loss must have occurred notwithstanding its breach of duty."

delay, the burden is on defendant to show that it notified each successive connecting road of the conditions regarding the manner of transportation, or, if it did not, that the delay was not attributable to its default in this respect.

APPEAL from Superior Court, Placer County; J. E. Prewitt, Judge.

Action by the Colfax Mountain Fruit Company against the Southern Pacific Company to recover damages resulting from delay in the transmission of freight. Judgment for plaintiff, and defendant appeals. Reversed.

Foshay Walker for appellant; Ben P. Tabor for respondent.

BRITT, C.—At the trial of this case the parties agreed on the facts by written stipulation which was adopted by the court as its findings. It thus appears that on October 24, 1890, defendant was a common carrier operating a line of railroad between Colfax, in Placer county, and Ogden, Utah, the latter point being the terminus of its route in the direction of the city of New York. On that day defendant received from plaintiff at Colfax a carload of fruit for transportation according to the terms of a written contract called a "shipping order" signed by plaintiff, describing the goods to be carried, stating that the same were to be forwarded to Ogden station and there delivered, and containing also the following matter: "Consignee, marks, and destination: Sgobel & Day, New York. . . . . Care C. & N. W., via Erie Dispatch, New York. Passenger train service, U. P. 32009. Agent Southern Pacific Company will please forward subject to conditions and agreements indorsed hereon." One of such conditions was that: "The company agrees to forward the property to the place of destination named, but its responsibility as a common carrier is to cease at the station where the freight leaves this road, when the property is to be delivered to connecting roads or carriers." It seems that the characters "U. P. 32009" meant "Union Pacific car No. 32,009." Concurrently with the execution by plaintiff of such shipping order, the defendant gave to plaintiff a "shipping receipt," which differed from the order mainly, for present purposes, in that it contained the words "passenger service through," instead of "passenger train ser-

vice,'' as in the order.   At this time there was a traffic
agreement in force between defendant and several other car-
riers, whose routes, by successively connecting, formed a
through line, viz., the Union Pacific Railway Company, the
Chicago and Northwestern Railway Company, and the Erie
Dispatch Company, and pursuant to such traffic agreement
said car of fruit was carried to New York.   There the Erie
Dispatch Company delivered it to the consignees, and col-
lected of them the whole amount of freight charges for the
haul from Colfax, which amount was divided in gross among
the several connecting carriers for the carriage by them re-
spectively furnished to the goods in accordance with their
said arrangement.   Defendant transported the car in ques-
tion, by passenger train, over its road to Ogden, and there
delivered it to the Union Pacific Railway Company, the next
connecting carrier, with request that the last-named com-
pany ''and its connection between Ogden and New York
City should, until the arrival of said car at final destination,
accord to it passenger train service.''   After such delivery
to the Union Pacific Company—but on what line does not
appear—delay occurred in the transmission of the car, so
that it was three days overdue on arrival at New York, and
in consequence the fruit suffered decay, and was sold at a
loss to plaintiff.   For the amount of such loss the court
below held defendant liable, and rendered judgment in plain-
tiff's favor.

With us it is declared by statute that the liability of a
common carrier who accepts freight for a place beyond his
usual route ceases upon delivery of the freight at the end
of his route in that direction to some other competent car-
rier carrying to the place of address, or connected with those
who thus carry, unless he stipulates otherwise: Civ. Code,
2201.   Plaintiff contends that the defendant in this instance
''stipulated otherwise.''   It is not argued that any relation
of partnership arose between the connecting carriers on ac-
count of their said traffic agreement (Darling v. Railroad
Co., 11 Allen, 298; Hutchinson on Carriers, sec. 169), but
that by the contract with plaintiff defendant itself under-
took to furnish passenger train service for the car from
Colfax to New York, the connecting lines being its agents
for this purpose.   For defendant it is claimed that upon de-

34

livery of the car at Ogden to the next connecting carrier, with instruction for continued passenger train service, defendant's obligation under the contract terminated. We are unable to agree with either contention. Conceding, as plaintiff maintains, that the words "passenger service through," in the shipping receipt, are to be read as part of the agreement of the parties—although in the stipulation on which the case was tried such contract is said to be contained in the shipping order signed by plaintiff—there is yet no repugnancy between the provision for such service and the condition indorsed on both order and receipt that the responsibility of defendant as a common carrier shall cease at Ogden when the property is delivered to a connecting road; and, in the absence of conflict between the provisions the fact asserted by counsel, that the language "passenger service through" was in writing, while said indorsement was printed only, is of no influence in the proper construction of the instrument: Vorwerk v. Nolte, 87 Cal. 236, 25 Pac. 412. The stipulation for through passenger train service, understood as it must be in connection with the agreement to deliver at Ogden, and with other parts of the contract, imports that defendant will, as a common carrier, afford service of that description over its own line to Ogden, and thereafter will, as a forwarding agent, do those things incumbent upon it to secure like service for the car to the place of final destination. The car, as marked and accepted, was "through" freight, yet this did not bind defendant to give it transportation beyond its own route: Civ. Code, 2201; Palmer v. Railroad Co., 101 Cal. 187, 35 Pac. 630. To stipulate for passenger train service, then, was but to particularize the means of transmission, not to change the parties by whom, without those words, transmission was unquestionably to be effected. Nothing different is held in Pereira v. Railroad Co., 66 Cal. 92, 4 Pac. 988. Hence, the responsibility of defendant as common carrier having ended at Ogden, no sufficient facts are found to make it liable for the subsequent delay. But the terms of the contract show that defendant's duty of forwarding agent existed after its relation of common carrier ceased, and continued to the end of the route. This is an important feature of such a contract. "The owner does not and cannot always accompany [the goods], and give his personal direc-

tions to each one of the successive carriers. He therefore necessarily, in his own absence, devolves upon the carrier to whom he delivers the goods the duty and invests him with authority to give the requisite and proper instructions to each successive carrier to whom, in due course of transportation, they shall be passed over for the purpose of being forwarded to the place of their ultimate destination. Otherwise they would never reach that place": Briggs v. Railroad Co., 6 Allen (Mass.), 246, 249, 83 Am. Dec. 626. See, also, Northern R. Co. v. Fitchburg R. Co., 6 Allen, 258. This duty it performed on delivery of the goods to the first intermediate carrier, the Union Pacific Company, but the record fails to show whether it gave or caused to be given any request or direction to the Chicago and Northwestern Railway Company, or to the Erie Dispatch Company, concerning the service to be afforded the car when it came into their hands respectively. Defendant took the risk of obedience to its request to the Union Pacific Company for communication of such instructions. If the delay complained of occurred by reason of failure in this particular, defendant is responsible for it. Plaintiff had not authorized delegation of its agency as forwarder. If, however, proper and timely instructions were given to each successive carrier, then defendant is not liable for failure of any of them to observe the same: Hooper v. Wells, Fargo & Co., 27 Cal. 11, 27, 85 Am. Dec. 211; Northern R. Co. v. Fitchburg R. Co., 6 Allen, 254.

There are, therefore, absent from the record material findings necessary to the rendition of judgment, and the case must be tried anew. Upon such trial the question of the burden of proof may be important. The authorities having a bearing on this subject by analogy are not harmonious, but in our opinion the better and juster reason requires that, the facts appearing in the present record being established, defendant shall have the burden of proof to show that, as bailee of the goods for the purpose of forwarding them from Ogden to New York, it performed or caused to be performed the obligations assumed by it under the contract with plaintiff as to each successive carrier, or, if it did not, then that the delay in transmission was not attributable to its default in this regard: Boies v. Railroad Co., 37 Conn. 272, 9 Am. Rep. 347; American Exp. Co. v. Second Nat. Bank of Titus-

ville, 69 Pa. 394, 402, 8 Am. Rep. 268; Clark v. Spence, 10 Watts' (Pa.), 335, 337; Funkhouser v. Wagner, 62 Ill. 59; Collins v. Bennett, 46 N. Y. 490; Ouderkirk v. Bank, 119 N. Y. 263, 23 N. E. 875.

The contract between the parties as stipulated at the trial varied greatly from that alleged in the complaint, but it seems no objection was made by defendant on this ground in the court below, and we think the plaintiff should have leave to amend on return of the case to that court. The judgment should be reversed and the cause remanded for a new trial.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is reversed and the cause remanded for a new trial.