CREAM CITY RAILROAD COMPANY, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY and others, Appellants.

*April 1 — April 28, 1885.*

CARRIERS. *(1) Contracts limiting liability. (2) What is a "carriage." (3) Release by shipper.*

1. A contract limiting the liability of a common carrier is not to be construed liberally in his favor.

2. The term "carriage" in a bill of lading, does not include a street railroad car.

3. A release executed by the shipper, not by authority or on behalf of the consignee, is no defense to an action by the latter for an injury to the property shipped.

APPEAL from the County Court of *Milwaukee* County. The case is sufficiently stated in the opinion. The defendants appealed from a judgment in favor of the plaintiff.

For the appellants there was a brief signed by *John W. Cary, D. S. Wegg,* and *Burton Hanson,* attorneys, and *H. H. Field,* of counsel, and the cause was argued orally by *Mr. Hanson* and *Mr. Wegg.* They contended, *inter alia,* that street cars were included in the term "carriages." In *Taylor v. Goodwin,* 28 Eng. (Moak), 748, a bicycle was held to be a carriage. The street cars having been taken by the appellants at the owner's risk, there could be no recovery unless it was at least shown that the injury resulted from appellants' negligence. *Morrison v. P. & C. Const. Co.* 44 Wis. 405; *Black v. Goodrich Transp. Co.* 55 id. 319; *Rail-*

*road Co. v. Reeves,* 10 Wall. 176; *Transp. Co. v. Downer,* 11 id. 129; Hutchinson on Carriers, sec. 767; *Mitchell v. U. S. Exp. Co.* 46 Iowa, 214. The respondent made the John Stephenson Co. its agent to make the shipment and any usual and necessary contracts pertaining thereto, and such contracts are in law the contracts of the respondent. *Robinson v. M. D. T. Co.* 45 Iowa, 470; *Christenson v. Am. Exp. Co.* 15 Minn. 270; *Nelson v. Hudson River R. Co.* 48 N. Y. 498; *Shelton v. M. D. T. Co.* 59 id. 258; *Levy v. Southern Exp. Co.* 4 Rich. (S. C.), 234; Redfield on Carriers, sec. 52; Hutchinson on Carriers, sec. 265; Lawson on Cont. of Carriers, secs. 223–4.

*Winfield Smith,* for the respondent, as to the ordinary use of the words "carriage" and "car," and the distinction between them, cited *Hegan v. Eighth Ave. R. Co.* 15 N. Y. 381; *Bass v. C. & N. W. R. Co.* 36 Wis. 450; *Roberts v. C. & N. W. R. Co.* 35 id. 679; *Duffy v. C. & N. W. R. Co.* 32 id. 269; *M. & C. R. Co. v. Hunter,* 11 id. 160; *Milwaukee v. Davis,* 6 id. 377. He also argued, among other things, that it is obligatory upon the carrier claiming exemption from the insurer's liability, to stipulate for it in clear, unmistakable language. Such provisions are construed strongly against the carrier. *Magnin v. Dinsmore,* 56 N. Y. 168; *Steele v. Townsend,* 37 Ala. 247; *Ayres v. Western R. Corp.* 14 Blatch. 9; *St. Louis & S. E. R. Co. v. Smuck,* 49 Ind. 302; *Barter v. Wheeler,* 49 N. H. 9; *Edsall v. Camden R. & Trans. Co.* 50 N. Y. 661; *Levering v. Union Transp. Co.* 42 Mo. 88; *Hooper v. Wells,* 27 Cal. 11; *Black v. Goodrich Transp. Co.* 55 Wis. 319; *Ashmore v. Penn. Steam Co.* 28 N. J. Law, 180; *Memphis & C. R. Co. v. Jones,* 2 Head, 517.

TAYLOR, J. This action was brought by the respondent, a street railroad company in the city of Milwaukee, to recover damages for injuries done to a street car while in transit from the city of New York to the city of Milwaukee.

The appellants are the carriers who transported the car from New York to Milwaukee. There is no dispute as to the facts. The car was delivered to one of the appellants in New York in good order. When it arrived in Milwaukee, and before the same was delivered to the respondent, it had been injured. A hole was broken in the rear end of the car, and the sill was broken and split. The amount of damage done to the car, as found by the jury, is not in dispute. The respondent obtained judgment in the county court, and the defendants appeal to this court.

The bill of lading upon which the car was transported from New York to Milwaukee is headed as follows:

"CANADA SOUTHERN LINE.

"*Fast Freight Line.*

"From New York, Boston, and all New England Points to the West, Northwest, and Southwest, Through Without Transfer in Cars of this Line.

"Marks: Cream City R. Co., Milwaukee, Wis. (Canada Southern Line.)

"Bill of lading from New York to Milwaukee depot.

"No. 413 BROADWAY, NEW YORK, December 2, 1882.

"Received from John Stephenson Company (Limited), in apparent good order (except as noted) the following packages (contents and value unknown), marked as in the margin, viz.:

"Two (2) new street cars on wheels, Nos. 61 and 63, covered, fixtures packed inside.

"Both loaded on one (1) flat car.

"Estimated weight, 20,000 lbs.

"To be forwarded to Milwaukee, Wis. It being expressly understood, that, in consideration of issuing this through bill of lading and guaranteeing a through rate, the Canada Southern Line reserves the right to forward said

goods by any railroad line between point of shipment and destination, and under the following conditions:

[Here follows several conditions, none of which are material in the determination of this case, except the following:]

"Carriages and sleighs, eggs, furniture, looking-glasses, glass and crockery ware, acids, machinery, stoves and castings, rough marble, musical instruments, liquors put in glass or earthen ware, and all other frail and brittle articles, fruit, and all other perishable goods, will only be taken at the owner's risk of fracture or injury during the course of transportation, loading and unloading, unless specially agreed in writing to the contrary. . . . The acceptance of this bill of lading, or receipt for goods, made subject to the conditions of this bill of lading, makes this an agreement between the Canada Southern Line and carriers engaged in transporting said goods and all parties interested in the property."

It is claimed by the learned counsel for the appellants that, under this bill of lading the carriers are not liable for any injury done to the plaintiff's street-car while in transportation, unless it be affirmatively established by the evidence that the injury was occasioned by the negligence of the carriers, or some one of them, or of their agents or servants. This claim for exemption from liability on the part of the appellants is based wholly on the clause in the bill of lading above quoted; and it is insisted that there was no evidence given on the trial, which tended to prove that the injury to the car was caused by the negligence of the carriers, or of their servants, agents, or employees.

It is claimed by the learned counsel for the appellants that a street railroad car is a "carriage," within the meaning of that word as used in said bill of lading, and therefore the carriers are not liable for the injury to the same, except upon clear proof of negligence on their part causing the injury. The law seems to be settled that a common carrier

may, by express contract, limit his liability as such carrier; and when he has so limited his liability, he can only be held liable for a loss of goods intrusted to his charge, or for injury to the same while in his possession, upon proof that the loss or injury was the result of the negligence of himself, his agents, or employees.

In construing contracts limiting the liability of common carriers, the provisions of the contract are not to be construed liberally in favor of the carriers. *Black v. Goodrich Transp. Co.* 55 Wis. 319, 322, and cases cited in brief of the respondent. Under this rule we are clearly of the opinion that the word "carriage," as used in said bill of lading, when considered in connection with the other things from which exemption from liability is sought by the carrier, cannot, except by the most enlarged construction, be held to include a street railroad car. The carriers in this same bill of lading call this thing, which is said to be a "carriage" within the ordinary meaning of that word, a "street railroad car on wheels." They do not designate it as a railroad "carriage," but a "car." To the ordinary mind, in this country at least, the word "carriage" alone does not convey the idea of a railroad car, or of a street railroad car, nor does it even convey the idea of a wheeled vehicle used for the transportation of merchandise or products used in ordinary business. The idea conveyed is a vehicle used for the transportation of persons either for pleasure or business, and drawn by horses or other draught animals over the ordinary streets and highways of the country, and not cars used exclusively upon railroads or street railroads expressly constructed for the use of such cars. As yet in this country the vehicles used for the transportation of passengers on railroads and street railroads are generally called cars, and occasionally coaches; seldom, if ever, "carriages." The definition given by the older lexicographers of the word "carriage" was of the most general and indefinite

kind, but that given by those writing in our own times is more in consonance with the restricted and more definite meaning of the word as understood by people in general.

Johnson, in his dictionary, dating back 130 years, defines the word "carriage" as "a vehicle;" "that in which anything is carried." In later years Worcester defines it as "any vehicle on wheels; especially a vehicle of pleasure, or for the conveyance of passengers." Webster, as "that which carries or conveys on wheels; a vehicle, especially for pleasure or for passengers; sometimes for burdens; as a close carriage; a gun-carriage." In the Imperial Dictionary, which is the latest authority, "carriage" is defined as "that which carries, especially on wheels; a vehicle. This is a general term for a coach, chariot, chaise, gig, sulky, or other vehicle on wheels,— as a cannon carriage on trucks; a block-carriage for mortars; and a truck-carriage. Appropriately the word is applied to a coach, and carts or wagons are rarely or never called carriages." If the definition given by Johnson was the true definition of the word in his time, it will be seen by a reference to the definition in the Imperial Dictionary that its common and ordinary meaning has been restricted to those vehicles which are used for the carriage of persons, such as a coach, etc., and does not include those wheeled vehicles which are used for the carriage of burdens only, such as wagons or carts, and most clearly does not include railroad cars, which can be used only on roads properly constructed for their use. Neither Webster, Worcester, nor the Imperial Dictionary mention railroad cars as coming within the common and ordinary meaning of the word carriage.

It is undoubtedly true that the word "carriage" might sometimes be construed to include railroad cars and other vehicles not coming under the denomination of coach, chaise, chariot, gig, or sulky. The meaning to be given a word which may be used to designate a variety of things

must in all cases depend upon its associations and the subject matter in relation to which it is used. The association in which the word is found in the bill of lading in question in this case, to our minds, clearly points to a meaning which excludes the idea of a railroad car or street railroad car. All its associates are things either fragile in their nature, or such as are easily damaged by exposure or perishable. Railroad and street cars are not the natural associates of the other articles mentioned in the exemption clause. We must therefore hold that the street car which was injured in this case was not a carriage within the meaning of the bill of lading, and so the plaintiff was entitled to recover upon proof of the injury while in the possession of the defendants as common carriers.

The other question as to whether there was sufficient proof in the case to show negligence on the part of the carriers, which was the cause of the injury, becomes immaterial, and we give no opinion on the subject.

The only other error relied on by the appellants was the alleged error in rejecting the release, as it is termed, given by the shipper of the car to the *New York Central Railroad Company*. We think the release was properly rejected. The contract for carriage, so far as the plaintiff was concerned, was contained in the bill of lading given for its benefit by the *Canada Southern Fast Freight Line*. The release was not made by the plaintiff, nor, so far as the evidence in the case shows, on his behalf by any person authorized by him to make it.

The concluding paragraph of the release shows that it was not made by the consignee, nor on his behalf. It reads as follows: " And in consideration aforesaid, I agree to indemnify and save harmless said company from any and all claims made by any consignee of any of said property for loss or damage thereto, arising from any causes aforesaid, while in the possession or under the control of said com-

pany." "I," in this paragraph, evidently means the John Stephenson Co. which shipped the cars. It does not act on behalf of the consignee, the plaintiff, nor does it pretend to do so; and, as said above, there is no evidence in the case which tends to show that the John Stephenson Company had any power or authority to bind the plaintiffs by any such contract or release. We find no error in the record.

*By the Court.*— The judgment of the county court is affirmed.