## N. K. FAIRBANK & CO. v. CINCINNATI, N. O. & T. P. RY.

(Circuit Court of Appeals, Sixth Circuit. May 17, 1897.)

CARRIERS—LOSS OF GOODS—EXCEPTIONS IN BILL OF LADING.

   In a clause in a bill of lading exempting the carrier from liability for "loss or damage arising from * * * collisions, explosions, accidents to boilers or machinery, * * *" the word "machinery" applies only to the group of mechanical parts connected with the boiler and steam supply, by which power is generated and applied, and the vessel or train of cars is propelled, and it does not include an axle of one of the cars in a train. Accordingly *held* that under such a bill of lading the carrier was not exempted from liability for damage caused by the breaking of an axle of a car.

81 F.—19

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

The action below was brought by N. K. Fairbank & Co. against the Cincinnati, New Orleans & Texas Pacific Railway Company to recover damages for the loss of four tanks of oil alleged to have been destroyed while in transportation over the defendant's railroad. On May 4, 1889, the Southern Cotton-Oil Company shipped from Atlanta, Ga., consigned to N. K. Fairbank & Co., at Chicago, Ill., five tank cars loaded with cotton-seed oil. All of them were shipped under bills of lading of the same form issued by the East Tennessee, Virginia & Georgia Railway Company, providing that they should be carried over the East Tennessee, Virginia & Georgia Railway, the Cincinnati, New Orleans & Texas Pacific Railway, and other roads. The bills of lading provided that the oil should be carried by "the E. T., V. & G. Railway to * * *, thence by connecting rail or other carrier via * * *, until they reach the station or wharf near their destination." The bill of lading contained the following provisions which have a bearing in this case: "It is mutually agreed, in consideration of the rates herein guarantied, that the liability of each carrier, as to goods destined beyond its own route, shall be terminated by proper delivery of them to the next succeeding carrier. No carrier, or the property of any, shall be liable for * * *, nor for any loss or damage arising from any of the following causes, viz.: Fire, from any cause, on land or water, or while awaiting shipment, transshipment or delivery, or during transportation; jettison; ice; freshets; floods; weather; pirates, robbers, or thieves; acts of God or of the country's enemies; riots, strikes, mobs, or combinations; collisions; explosions; accidents to boilers or machinery; stranding; straining; any accident on or perils of the seas or other waters, or of steam or inland navigation; restraints of government; legal process; claims of ownership by third parties; detention or accidental delay; want of proper cooperage or mending; insufficiency of package in strength or otherwise; rust; dampness; loss in weight; leakage; breakage; sweat; blowing; bursting of casks or packages from weakness or natural causes; evaporation; vermin; frost; heat; smell; contact with or proximity to other goods; natural decay or exposure to weather; nor for the condition of baling of hay, hemp, or cotton, or for loss or damage of any kind on goods whose bulk or nature requires them to be carried on open cars or on deck, or for the condition of packages or any deficiency in the contents thereof if receipted for by consignees as in good order." The bill of lading contained this further provision: "This bill of lading is signed for the different carriers who may be engaged in the transportation, severally, not jointly, and each of them is to be bound by, and have the benefit of, all the provisions thereof as if signed by it, the shipper, owner, and assignee." The cars, after being loaded, proceeded to Chattanooga, and were delivered to the defendant company on May 5th. At about 2 o'clock on the morning of May 7th the train containing these cars was wrecked on defendant's line, and four of the tank cars were so damaged that the oil contained therein was spilled, and totally lost. The market value of the oil at the time, for the purposes of this suit, was agreed to be $5,270.53. This suit was brought to recover for the loss of the four tanks of oil. The third defense of the answer set up the conditions in the bill of lading heretofore stated, and averred that the loss of the oil was solely due to an accident to certain machinery, to wit, the axle of a car in defendant's train in which said four tanks of oil were being transported, which axle, without any fault or negligence on the part of this defendant, failed; and broke down, under said car, whereby said four cars, being in the rear thereof, were derailed, and the contents thereof were lost. The case was twice tried. In the first trial the court directed a verdict for the plaintiff. The trial court was of opinion that it had erred in directing a verdict for plaintiff, and on motion granted a new trial. In the second trial the court directed a verdict for the defendant, and entered judgment upon the verdict. This writ of error is prosecuted to reverse the judgment. At the trial, there was no evidence tending to show that defendant was guilty of a want of care in the matter of the axle. It broke because of an internal defect in the material which external examination could not have discovered.

Ramsey, Maxwell & Ramsey, for plaintiff in error.

Judson Harmon, Edward Colston, A. W. Goldsmith, and Geo. Hoadly, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts as above). The learned judge at the circuit, finding from the undisputed evidence that the loss of the oil had been occasioned by the breaking of an axle, held that such a cause was an accident to machinery, within the exemption of the bill of lading, and so directed a verdict for the defendant.     The construction thus put upon the exemption in the bill of lading presents the only question which we deem it necessary to consider.    It is well settled that exemptions in favor of a common carrier in bills of lading are to be strictly construed against the carrier, and that any doubt or ambiguity therein is to be resolved in favor of the shipper.    Black v. Transportation Co., 55 Wis. 319, 13 N. W. 244; Railway Co. v. Talbot, 39 Ark. 524; Norman v. Binnington, 25 Q. B. Div. 475, 477; Taylor v. Steam Co., L. R. 9 Q. B. 546, 549; Burton v. English, 12 Q. B. Div. 218, 224; Cream City R. Co. v. Chicago, M. & St. P. Ry. Co., 63 Wis. 93, 23 N. W. 425.    "And when the particular dangers or risks against which the carrier has specifically guarded himself in his receipt are followed by more general and comprehensive words of exemption, the latter are to be construed to embrace only occurrences ejusdem generis with those previously enumerated, unless there be a clear intent to the contrary." Hutch. Carr. §§ 275, 276; Hawkins v. Railway Co., 17 Mich. 57; The Caledonia, 157 U. S. 124, 15 Sup. Ct. 537.    It is perfectly manifest from a reading of the bill of lading and the exemption thereof that the bill was designed as a contract for both land and water transportation, for the clause runs:

"Fire from any cause, on land or water, or while awaiting shipment, transshipment, or delivery, or during transportation; jettison; ice; freshers; floods; weather; pirates, robbers, or thieves; acts of God or the country's enemies; riots, strikes, mobs, or combinations; collisions; explosions; accidents to boilers or machinery; stranding; straining; any accident on or perils of the seas or other waters, or of steam or inland navigation," etc.

Light is thrown upon the meaning of the phrase "accidents to boiler and machinery" if we consider it as applied to a ship as well as to a freight train.    The juxtaposition of the words "boiler" and "machinery" certainly suggests that machinery refers to the group of mechanical parts connected with the boiler and steam supply by which power is generated and applied, and the vessel is propelled through the water.    And the term must have the same limitations when applied to a train of cars.    In this light, "machinery" only includes the mechanical instrumentalities present in the engine room of the steamer or the locomotive of the train.    The cars and their appurtenances are the things which are being moved or drawn by the machinery.    Parts of the car are not, in our opinion, in the common acceptation of the term, embraced within the term "machinery," especially when that is associated with the term "boilers."    It is true, it may be difficult to draw the line as to certain

devices used upon the cars which are directly connected with the engine, as, for instance, the appliances necessary to the operation of the Westinghouse air brake. These are directly connected with the engine, and yet are a permanent part of the car. ` But, while doubtful cases may be suggested, we are very clear in our opinion that those devices and parts of a car which have no physical operation and connection with the locomotive except by means of the cars of the train and the couplers between them are not within the meaning of the term "machinery" in the phrase "accidents to boilers and machinery," any more than the plates on the hull of a steamship can be said to be part of its machinery. The wheels and axle are necessary to the movement of the car, just as the hull and plates on the ship are necessary to its progress through the water; and in a wide sense they are a part of the machinery necessary to render the transportation of the train or ship possible. But they certainly would not be so construed except in cases where the most liberal rule of construction is to prevail. There is very little authority upon this question, although the form of the bill of lading herein seems to have been a very old one.

In Porter on the Law of Bills of Lading (section 203) it is said that "the phrase 'damage from machinery' will not cover a loss caused by the breaking of tackle used to discharge cargo. The word 'machinery,' it has been said, includes only the machinery by which the vessel is propelled." In support of this the author cites the Case of Galley of Lorne, Mitch. Mar. Reg., Feb. 11, 1876, and Legg. Bills Lading, p. 179.

We do not think that the cases cited by the counsel for the appellee, and which were relied on by the learned judge at the circuit, support the conclusion reached, because in them the term was used with reference to a subject-matter quite different from that in the case at bar. In Railway Co. v. Brooks, 84 Ala. 138, 4 South. 289, the question was whether an injury in the eye, received by a railroad employé, caused by a scale flying from the iron rail of the track when struck with a defective hammer, was not an injury caused by reason of a defect in the condition of the ways, works, machinery, or plant connected with or used in the business of the master or employer, and so within the statute to define the liabilities of employers or workmen for injuries received by the workmen while in the service of the employer. The court held that the hammer was not a part of the machinery within the statute, but in the course of the discussion it gave a wide definition to the term "machinery,"—a definition certainly wide enough to include the axles of cars in a train. The judge said:

"In construing words used in a statute, reference should be made to the subject of legislation, and if they have acquired a defined, popular signification when referable to such subject the presumption is that they were used in such sense by the legislature. A machine is a piece of mechanism, which, whether simple or compound, acts by a combination of mechanical parts, which serve to create or apply power to produce motion, or to increase or regulate the effect. As used in the patent act, it has been defined to be 'a concrete thing, consisting of parts, or of certain devices or combination of devices.' Burr v. Duryee, 1 Wall. 531. Primarily, machinery means the works of a machine,—the combination of the several parts to put it in motion. But we do not understand that the term was used in the statute in its primary sense, but, having a

more enlarged signification, should be construed as so used, nothing appearing to show that it was intended to be used in its primary or restricted sense. Thus understood, the term 'machinery' embraces all the parts and instruments intended to be and actually operated from time to time exclusively by force created and applied by mechanical apparatus or contrivance, though the initial force may be produced by the muscular strength of men or animals, or by water or steam, or other inanimate agency. Seavey v. Insurance Co., 111 Mass. 540. The carding, spinning, and weaving machines, together with the instrumentality by which the prime motive power is created or applied, constitute the machinery of a cotton mill. When cars, though used at times, and at other times detached, are formed into a train, to which the propelling force is imparted by means of a locomotive, the entire train constitutes machinery connected with or used in the business."

The association of the word "machinery" with the words "ways and plants" was quite enough to justify the court in giving the term an enlarged signification in the case cited, but the reasoning of the court shows that in a case where the rule of construction is a narrow one the term would not embrace either the car body, carwheels, or the car axles, but only that combination of mechanical parts connected with the locomotive and boiler for the propelling of the train.

In the case of Seavey v. Insurance Co., 111 Mass. 540, the question was of the construction of a contract of insurance in which the property insured was described as "the engine and machinery contained in a two-story frame building for the manufacture of tinware," etc. The issue was whether this language included 642 forming and cutting machines, which were dies made of iron or steel, and used to give form to the various utensils made in the business. These dies were capable of being removed from the press, and others were substituted in their place as often as the product of manufacture was to be varied. It was decided that in such a policy the word "machinery" might fairly be held to cover all the implements intended to be operated by the machinery in the business of the insured, and which were usually operated in the regular and ordinary prosecution of the business described in the policy. It will be observed that in this case the rule of construction was favorable to the assured, and that the words "for the manufacture of tinware" justified a broad interpretation of the word machinery.

In Com. v. Lowell Gaslight Co., 12 Allen, 75, the question was whether, under a tax law which imposed taxation upon the market value of the capital stock of the gas company, but permitted this amount to be reduced by deducting the value of the real estate and machinery for which the corporation was assessed in the town or city in which it was established and carried on its business, the mains or pipes laid down in the streets to distribute the gas, and the gas meters were to be regarded as machinery of the corporation; and it was held that they were, the court saying:

"Indeed, in a broad, comprehensive, and legitimate sense, the entire apparatus by which gas is manufactured and distributed for consumption throughout a city or town constitutes one great integral machine, consisting of retorts, station meters, gas holders, street mains, service pipes, and consumers' meters, all connected and operating together, by means of which the initial, intermediate, and final processes are carried on from its generation in the retort to its delivery for the use of the consumers."

It is hardly necessary to point out that the almost figurative sense in which the term "machinery" is here used in favor of the taxpayer, and to support a reasonable construction of the statute, can have no application to the case at bar in which the word "machinery" is to be given a specific and restricted meaning.

Our conclusion upon this point renders it unnecessary for us to consider the remaining argument pressed upon us by counsel for the plaintiff, to wit, that a common carrier by train is held to an implied warranty of the sound condition of the cars in which the merchandise transported is carried, analogous to the implied warranty of seaworthiness to which the common carrier by sea is held, and that in such cases the exception as to accidents from machinery in the bill of lading applies only to accidents after the transportation has begun, and does not include those which arise from defects, though hidden, if in existence before shipment commences. The judgment of the court below is reversed, with directions to order a new trial.