NEW CASTLE TERMINAL CO. v. WESTERN ASSUR. CO.

SAME v. ÆTNA INS. CO.

SAME v. OLD COLONY INS. CO. OF BOSTON, MASS.

Nos. 1965–1967.

District Court, D. Maryland.

Feb. 9, 1934.

Edgar T. Fell, of Baltimore, Md., for libelant.

Lord & Whip, of Baltimore, Md., for respondents.

WILLIAM C. COLEMAN, District Judge.

The libels in the three cases before the court all rest upon the same ground, the libelant in each case being the same, although the defendants are different. The claim in each case is for the cost of repairs, and expenses incident thereto, alleged to have been necessitated by damage caused to the engines and machinery of the S. S. Piankatank, when her port wheel or propeller struck a submerged piece of piling while she was being brought to her wharf at Onancock, Va., on July 8, 1932. In each case the respondent, an insurance company with which libelant carried marine insurance, has filed an exception to the libel on the ground that there is no liability under the policy, since the "loss and damage sued for have arisen from derangement or breakage of machinery not caused by stress of weather, stranding, collision with another vessel, or burning."

The sole question, therefore, presented for decision at this time is whether the insurance policies in question do in fact cover the type of injury that occurred. This can only be answered by examining and interpreting the pertinent clauses of the policies. First, it is to be noted that all of them expressly insure the "vessel, tackle, apparel, stores, supplies, furniture, *engines, boilers, machinery* and appurtenances, * * *" against marine perils in certain defined waters. In two of the policies, it is made a condition precedent to any liability under them "that the Assured establish that any claim * * * for expenses or loss, damage, detriment or hurt to said vessel, has been directly caused by peril insured against as aforesaid, and that the Assured further establish that such * * * loss, damage, detriment or hurt *has not arisen from or been caused by, either directly or indirectly,* any of the following or other excluded causes, namely, * * * *any injury, derangement or breakage of machinery,* unless caused by stress of weather, stranding, collision with another vessel, or burning. No loss is to be paid when such loss arises from failure to keep the vessel well pumped out." (Italics inserted.) The third policy, that is, the one issued by the Ætna Insurance Company, is slightly different. It condenses the statement respecting the excluded situations, as follows: "There shall be no liability under this policy although the loss or damage may be *caused by* a peril aforesaid, *for * * * any injury, derangement or breakage of machinery, or any damage resulting from any such events,* unless the Assured shall establish that the same are directly caused by sinking, stranding, collision with another vessel, or burning. No loss is to be paid when such loss arises from failure to keep the vessel well pumped out." (Italics inserted.)

■ The damage claimed in all three of the libels is damage to "the ship, her engines and machinery" as a result of the collision with the submerged piling, but at the hearing on the exceptions libelant admitted the only damage was to the engines and machinery as a result of being thrown out of alignment by the impact. It is also admitted that this collision occurred within the territory covered by the policies, and that it was a marine peril within the provisions thereof. Thus the sole question is whether the clauses above quoted permit recovery where, as in the present cases, the resulting damage has been solely to the machinery; or whether these clauses should be construed as excluding damage to the machinery as well as damage caused by the machinery, unless, of course, falling within one of the exceptions with which we are not here concerned, because the only one that even suggests application to the present situation is the "stranding" exception, which we do not believe is, in fact, applicable, and which, although suggested, was not stressed in the argument. Stranding implies a settling of the vessel, some rest or interruption of the voyage, and not merely a "touch and go" situation which appears to have been the situation in the present case. At least nothing appears in the pleadings or from the admissions of libelant's counsel in argument from which a stranding may reasonably be inferred. See London Assurance Co. v. Companhia De Moagens de Barreiro, 167 U. S. 149, 158, 17 S. Ct. 785, 42 L. Ed. 113; Lehigh & Wilkes-Barre Coal Co. v. Globe & Rutgers Fire Ins. Co. (C. C. A.) 6 F.(2d) 736, 738, 43 A. L. R. 215.

■ The respondents rely upon a very technical argument which, summarized, is that, since recovery is conditioned, in two of the policies, upon damage which "has not arisen from or been caused by, * * * derangement or breakage of machinery, ⁰ ⸰ ⸰" we must infer that the use of this language was intended to exclude all damage having any relation whatsoever to machinery derangement or breakdown. Libelant, on the other hand, contends that the reasonable construction to be placed upon this language is that the excluded damage is that which such derangement or breakdown causes to the vessel or some other part of it, and not damage to the machinery itself when deranged or broken down by other causes. Damage cannot be said to arise from, or to be caused by, something when that something has had no part, directly or indirectly, in causing the damage, as is true in the cases before us. No

damage was either caused by the machinery or did it arise from the machinery, but it arose from, and was caused by, the port wheel of the vessel being forced into collision with the submerged piling. In other words, the machinery played no part in the causation, but was the thing upon which the injury was inflicted by outside force. This being true, we cannot give to the language of these two policies the broad construction which the respondents claim.

The only case cited, and the only one to which our attention has been directed, which would seem to lend any support to respondent's contention, is Quinlivan v. Northwestern Fire & Marine Insurance Co., 37 F.(2d) 29, a recent decision of the Circuit Court of Appeals, Second Circuit. There, a clause similar to the one here under review was involved. A dredge, while in operation, received injury to a certain part of her machinery, with the result that her pump was stopped, she filled and sank. It appears from the court's opinion in that case that the damages claimed under the libels were damages to the dredge caused by her sinking, and it does not appear that the court had before it the precise question here involved. Indeed, in that case recovery, which was denied— whether properly or improperly we need not discuss—turned upon the question whether the elbow pipe on the dredge constituted machinery within the exception in the policy, and in holding that it did, and that therefore the insurer was not liable for the sinking of the dredge due to water entering through the elbow pipe, which was broken by a stone picked up while the dredge was in operation, the court cannot be said to have had under consideration the narrower point here in controversy, namely, whether the clause in the policy would, in fact, have permitted recovery for injury to the elbow pipe, had such been claimed, as distinguished from injury to the vessel herself, resulting from the breaking of the elbow pipe.

Further support for the conclusion here reached is to be found in the fact that the terminating sentence in each of the clauses uses the words "arising from" in dealing with the question of failure to keep the vessel well pumped out; that is to say, this phrase is obviously used as synonymous with "caused by." Similarly, the phrase "arising from" is used in the beginning of the clauses in question when the marine perils are referred to.

However, a difference in the language employed in the third, or Ætna, policy, requires a different conclusion. There, as we

892

have seen, liability is expressly excluded *"for * * * any injury, derangement or breakage of machinery or any damage resulting from any such events, * * *"* unless falling within one of the specified exceptions, none of which is applicable (italics inserted); that is to say, the last part of this clause in the Ætna policy is the equivalent of the limitation in the other two policies, but the first part of this clause is broader because it extends the exclusion so as to cover liability *for* machinery damage which must be construed as embracing damage *to* machinery, otherwise the common sense meaning of the phraseology adopted would be avoided.

It is quite possible that all three of the policies in suit were intended by their drafters to accomplish the same end, but the difference in the language employed, which may have been inadvertent and which, upon less careful analysis than we are required to give to it, might seem to be inconsequential, does nevertheless produce a difference in liability which is material when applied to the present situation.

Reference has been made in argument to the history of marine insurance, with particular relation to the limitations placed upon allowances for damage caused by derangement or breakage of machinery, but we do not find that these historical allusions have any application to the present cases.

For the aforegoing reasons, the exceptions to the libels in cases Nos. 1965 and 1967 are overruled, but the exception to the libel in case No. 1966 is sustained.