[No. 8,495.   Department One.—November 7, 1884.]

## JOHN PEREIRA, Respondent, v. CENTRAL PACIFIC RAILROAD COMPANY, Appellant.

Contract—Railroad Company—Liability for Transportation beyond the Terminus of its Road.—Where a railroad company contracts to convey goods over its own and connecting lines, and to deliver them at their destination, at a place beyond its terminus, within a certain time, it is liable to the shipper for losses caused by delays in transportation over the connecting roads.

Id.—Evidence—Shipping Receipt.—It is a question of fact for the jury, whether the contract between the company and the shipper provided for transportation over connecting roads. A receipt given by the company to the shipper is not conclusive evidence of the terms of the contract.

Appeal from a judgment of the Superior Court of the county of San Joaquin, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*W. L. Dudley*, for Appellant.

*Caleb Dorsey*, and *D. S. Terry*, for Respondent.

Ross, J.—The main question in this case is, whether the defendant, whose road ends at Ogden, in the Territory of Utah, contracted with the plaintiff to carry his fruit beyond its own terminus over other roads to the city of New York. That question was submitted to a jury in the court below, and the finding in effect was that defendant did so contract.

It appeared in evidence that the plaintiff, being desirous of sending to the New York market a lot of pears, applied to the

general freight agent of the defendant corporation, to know
what defendant would charge him per carload, to be sent by
passenger train; plaintiff at the time informing the agent that
it was necessary that the fruit should be transported to its des-
tination within ten or twelve days.   The agent replied that he
did not then know what it would cost, but thought about $1,500
per carload; and further, that he could not send it through to
New York by passenger train, but could send it by passenger
train as far as Omaha, and from there to New York by fast
freight train, and that thus sent it would reach New York with-
in the time mentioned.   The agent promised to let plaintiff
know within a few days, as to the terms upon which defendant
would take the fruit, and accordingly wrote and sent to the
plaintiff this letter:

> " CENTRAL PACIFIC RAILROAD COMPANY,
>                     " GENERAL FREIGHT OFFICE,
>                 " SACRAMENTO, CAL., Nov. 14, 1871.
> " JOHN PEREIRA, ESQ., Jamestown, Tuolumne Co., Cal.
>
> " *Dear Sir* :   I am in receipt of your favor of November 10th,
> and have this day telegraphed you as follows: Fruit Stockton
> to New York, to Omaha by passenger train, thence by freight,
> ten hundred and seventy-five ($1,075), cy. per car.   Freight
> must be prepaid, or else guaranteed by responsible parties.
> The current rates on wine, Stockton to New York, are as fol-
> lows: Wine in wood, owner's risk of leakage, carloads of 18,-
> 000 pounds, and over, $2.50 per 100 pounds—less than 18,000
> pounds, and over 3000, $3.50 per 100 pounds—3000 pounds,
> and under, $4.50 per 100 pounds.   It is not probable that there
> will be any material change in these rates before next spring.
> " Yours truly,
>                     " C. W. SMITH, G. F. A."

Plaintiff accepted the terms thus proposed, and accordingly
delivered to the defendant on the 23d of November, 1871, one
carload, consisting of 536 boxes of pears, consigned to L. Ben-
edict, New York city; and at the same time executed to defend-
ant the guarantee it required, that the freight money, $1,075,
would be paid to defendant on the delivery of the fruit in New
York.   Such delay occurred in the transportation of this lot of

fruit to its destination, that the result was, it was damaged to such an extent as rendered it almost worthless, and the consignee therefore refused to receive it.

The next lot, consisting of 235 boxes of pears, was delivered to defendant upon the same terms, and with a similar guarantee, on the 8th day of December, 1871, and was never transported to New York at all, and resulted in a total loss to the plaintiff.

The evidence put before the jury in this case, in support of the special contract relied on by the plaintiff, is quite as strong if not stronger than the evidence given in *Railroad Company* v. *Pratt*, 22 Wall. 131, to establish a similar contract; and in that case, the Supreme Court of the United States held the evidence sufficient to sustain the verdict of the jury, to the effect that the undertaking of the company was to carry the property through to the point of final destination. In the case at bar, it was understood by both parties, that it was necessary that the fruit should be carried through to New York within twelve days at the farthest, and that to accomplish this, it was necessary that it should be sent a portion of the way, at least, by passenger train. Defendant accordingly expressly agreed to carry it by passenger train as far as Omaha—a point beyond the terminus of its own road—and thence by fast freight train to New York—demanding at the same time, as it had the right to do, a guarantee from the plaintiff that the freight money should be paid to *defendant* upon the delivery of the fruit in the city of New York.

When the first lot of fruit was delivered by plaintiff's teamster to the local agent of the defendant, the latter gave the teamster a receipt for the same, which was partly in print and partly in writing, acknowledging the receipt, in apparent good order, of the property, marked and consigned to L. Benedict, New York, and which receipt recites that " they (the railroad company), agree to deliver with as reasonable dispatch as their business will permit, subject to the conditions mentioned below, in like good order (the danger incident to railroad transportation, loss or damage of combustible articles by fire while in transit, and unavoidable accidents, excepted), at —— station, upon the payment of charges. The company further agree to forward the property to the place of destination as per margin,

but are not to be held liable on account thereof, after the same shall be delivered as above. The company, however, guarantee the through rate of freight as designated below : Conditions : The company do not agree to carry the property by any particular train ; nor in time for any particular market    *    *    *    It is a part of this agreement that all other carriers transporting the property herein receipted for,_as a part of the through line, shall be entitled to the benefit of all the exemptions and conditions above mentioned."

It seems that a similar receipt was given by the local agent of defendant to plaintiff's teamster for the second lot of fruit.

It is contended on behalf of defendant, and was so set up in its answer filed in the cause, that the terms and conditions stated in the receipt constituted the contract between the parties to this action for the transportation of the fruit in question. Whether or not this was so was a question for the jury to determine, in view of all the evidence. The simple delivery of a receipt to the shipper is not conclusive upon the latter. ( *Tyler* v. *W. U. T. Co.*, 60 Ill. 431; *Mich. Cen. R. R. Co.* v. *Hale*, 6 Mich. 244; *Adams Express Co.* v. *Haynes*, 42 Ill. 89; *Ill. C. R. R. Co.* v. *Frankenberg*, 54 Id. 88.) The court below properly left it to the jury to say whether the shipments in question were made under the contract declared on by the plaintiff, or whether the terms and conditions stated in the receipts constituted the contract between the parties. The jury having found from evidence, which we think sufficient to support the verdict, that defendant undertook to carry the fruit through to New York, the other companies are to be deemed the agents of the defendant, for whose fault it is responsible. (*Railroad Company* v. *Pratt, supra.*)

Some minor points are made for the defendant, which we have considered, but see in them no sufficient ground for disturbing the judgment.

Judgment and order affirmed.

MCKINSTRY, J., and MCKEE, J., concurred.

Hearing in Bank denied.