[No. 19198.    Department Two.—January 26, 1894.]

## OSCAR PALMER, RESPONDENT, v. ATCHISON, TOPEKA, AND SANTA FÉ RAILROAD COMPANY, APPELLANT.

COMMON CARRIERS—DELAY IN TRANSPORTATION OF GOODS—REASONABLE TIME—PLEADING—DEMURRER.—Where the complaint in an action to recover damages for the alleged failure of a railroad company to transport and deliver to plaintiff five carloads of furniture within a reasonable time is in the usual form employed in common-law actions *ex contractu*, it is not subject to a general demurrer on the ground that the complaint should have specified what was a reasonable time for the transportation of the goods; and in the absence of a special demurrer directed to that point, the general allegation of a failure to transport and deliver within a reasonable time is sufficient.

ID.—LIABILITY OF CARRIER FOR DELAY—ORDINARY CARE—UNEXPECTED STORM.—A common carrier is liable for delay in the transportation and delivery of goods only when it is caused by his want of ordinary care and diligence; and where it appears that the delay complained of occurred upon the mountain division of a railroad, and was occasioned by an unexpected storm of unusual severity upon that division, and that the operators of the road used every reasonable effort to keep the line open, the railroad is not responsible for such delay.

ID.—TRANSPORTATION OVER CONNECTING LINE.—Where one railroad company accepts freight for a place beyond its route, in the absence of a stipulation that such company shall be responsible beyond the terminus of its line, its liability as a common carrier ceases upon making delivery to the connecting line at the end of its line.

ID.—LAW OF PLACE OF CONTRACT.—The law of the place where the contract of carriage was made governs in determining the liability of the carrier, unless the parties at the time of making it had some other law in view.

ID.—LAW OF ANOTHER STATE—PRESUMPTION.—Where a contract for transportation by a railroad company was made in another state, the law of which was not put in evidence, it must be presumed that the law of that state is the same as the law of this state.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Hunsaker, Britt & Goodrich,* for Appellant.

*Luce & McDonald,* and *Dodson & Ecker,* for Respo.. nt.

SEARLS, C.—This action was brought to recover from defendant, a corporation and a common carrier, damages sustained by plaintiff by reason of the alleged failure of defendant to transport from Kansas City, Missouri, to San Diego, California, and deliver to the plaintiff, within a reasonable time, five carloads of furniture. Plaintiff had a verdict for one thousand dollars, upon which judgment was entered. Defendant appeals from the judgment and from an order refusing a new trial.

Plaintiff's recovery was founded upon the second count of his complaint. To this a demurrer was interposed which appellant contends should have been sustained, but which was overruled. The portion of the complaint to which objection is taken may be epitomized as follows:

On the twenty-fourth day of December, 1887, the defendant, for a valuable consideration, undertook to receive and carry over its road from Kansas City to San Diego, and deliver to plaintiff within a reasonable time five carloads of furniture, etc.

That defendant received the same at the date mentioned for the purpose of transportation aforesaid, but did not, as it undertook to do, transport said goods to San Diego within a reasonable time, and did not deliver the same to plaintiff until on or about February 15, 1888.

The objection goes to the point that the complaint should have specified what was a reasonable time for the transportation of the goods between the two points, and failing to do so was open to an attack upon the ground that it did not state facts sufficient to constitute a cause of action.   In the absence of a special demurrer directed to this point, we think the general allegation of a failure to transport and deliver within a reasonable time was sufficient.

The form used by the pleader is substantially that laid down by Chitty as sufficient in actions *ex contractu* in his work on pleadings.   (2 Chitty on Pleading, 103.)

It was admitted at the trial that the Atchison, Topeka, and Santa Fé railroad terminated at Albuquerque, New Mexico, and that the Atlantic and Pacific ran from Albuquerque into California and connected at Barstow with the California Southern, which extended to San Diego, the three roads thus forming a through line from Kansas City, Missouri, to San Diego, California, each road being operated by a different company.

The five carloads of goods were delivered to defendant at Kansas City, directed to the plaintiff at San Diego as follows:

2 cars December 24, 1887.

1 car December 27, 1887.

2 cars January, 1888.

The company furnished to the shipper bills of lading, which, so far as important here, were as follows:

" (12 24-1887.)
    "ATCHISON, TOPEKA, AND SANTA FE R. R. Co.
        " K. C. STATION.

" Will receive the under-noted property and transport it over the road and deliver to consignees, or the next company of carriers (if the same is going beyond its line of road), for them to deliver to the place of destination of said property ; it being distinctly understood that this company shall not be responsible as common carriers for said property beyond its line of road, or while at any of its stations awaiting delivery to such carriers—the company being liable as warehousemen only. Abernathy Fur. Co. Shipper, to Oscar Palmer, Consignee, San Diego, California," etc. Then follows usual description and number of car. Signed, " Wm. Carroll for the Co." The bills of lading for the several cars were the same except as to dates, numbers, etc.

The evidence shows, without substantial contradiction, that on the fifth day of January, 1888, a snowstorm of unprecedented severity commenced over the mountain region traversed by the Atlantic and Pacific railroad, which lasted for a period of ten days to two weeks, blocking the road and practically stopping the transportation of freight, during which time some six hundred and eighty-three loaded cars accumulated at Albuquerque and in its vicinity, with the result that when the road was again opened it was, say thirty days, before the accumulated freight was finally passed over the road.

The Atlantic and Pacific Company seems to have made every effort to open its road: it rented some thirty-eight locomotives in addition to forty-six owned by it, most of which for many days were engaged in an effort to open the road, and no labor or expense was spared in the work. The yards and sidetracks of the Atlantic and Pacific road became filled with cars until they could receive no more, when they notified the defendant to hold all cars at Albuquerque until they were able to receive and forward them. This unexpected blockade on the Atlantic and Pacific is shown to have been the sole cause of the delay of plaintiff's goods.

There is no showing of delay upon defendant's road except as the cars were held by it at and near its western terminus because the Atlantic and Pacific could not receive and forward them.

All the goods were shipped prior to the storm except those in the two cars shipped January 7th, and when the storm was over the cars were sent forward from Albuquerque in the order received.

It must be conceded that a railroad company receiving freight for transportation over its own and connecting lines, which, by reason of some fact known to it and unknown to the shipper, is liable to detention beyond the usual time occupied in transit, should inform the shipper of such fact, in order that the latter may exercise his judgment as to the propriety of making the shipment. There is not, however, any evidence in the record tending to show that defendant had, at the date of the last shipment on January 7th, any knowledge of the storm which then and since the 5th had been prevailing on the mountain division of the Atlantic and Pacific.

Very slight evidence would be sufficient notice of such a fact had the storm been near at hand or on its own road, but when we consider that it was upon another road over one thousand miles away and in a region where storms of the nature and duration of the one in question were unknown up to that time, we cannot see how, in the absence of evidence, defendant can be presumed to have known that an unusual storm had set in, any more than it would be presumed to know the length of time it would continue, or the great depth to which the snow would fall.

In passing judgment on this question we are not at liberty to view it in the light of present known facts, but must confine ourselves to the facts apparent when defendant received the freight. We must bear in mind that the blockade occurred in a latitude and at a point where a like storm was not to be expected and where if snow fell it might be expected to be of short duration,

and that freight received at Kansas City, and requiring several days to reach the point in question, might reasonably be expected to meet an open road by the time it reached the point of difficulty.

Under such circumstances, had the proofs shown knowledge of the storm on the part of defendant at the date of receiving the goods, it cannot be said as a matter of law that a failure to notify the shipper was negligence, but only that it was such evidence of negligence as should be submitted to the jury to determine whether there was in fact negligence on the part of defendant.

Respondent claims that defendant was aware, when it received the goods, that there was a great blockade of freight on its different connecting lines to haul which they were unprepared, and that this unusual press of business coupled with inadequacy of rolling stock was the cause of the delay; that defendant had notice of these facts and should have notified the consignor of plaintiff, and failing so to do, it is liable.

The testimony on this point is to the effect that it was the busy season of the year for traffic and travel to southern California; that a large volume of freight was moving westward over the road.

The testimony shows, however, that "the principal reason for the delay was on account of the snowstorm, for, had it not been for the snowstorm, the delay would not have occurred. The rush of freight or the rapid increase of freight over usual traffic did not cause the delay for this reason. . . . . The snowstorm alone was the primary cause of the delay, of the accumulation of freight, which I have described. By primary cause, I mean the line was open for business before the snowstorm, and was running regularly, and then when the snowstorm came, that it took such a large amount of motor power to open up the line that, while we were clearing it, no freight or passenger traffic could be moved over the mountain division, and in the mean time it allowed freight to greatly accumulate at other points."

The same witness, after describing the storm and the

efforts to keep the Atlantic and Pacific open, says: "I do not see that the delay could have been avoided.   If that snowstorm had   not happened, Mr. Palmer's cars would have gone through all right.   The line was running on good time previous to the storm."

Thus much is quoted as a sample of the evidence on the part of defendant which, we think, establishes the fact without substantial conflict that the delay complained of occurred upon the Atlantic and Pacific road and was occasioned by the storm upon the mountain division of that road, and that the operators of such road used every reasonable effort to keep the line open.

"A common carrier is liable for delay only when it is caused by his want of ordinary care and diligence." (Civ. Code, sec. 2196.)   "Accordingly it has been held that when the carrier's canal-boat was run into by a scow, which made it necessary for him to stop for repairs, the delay thereby occasioned was excusable (*Parsons* v. *Hardy*, 14 Wend. 215); or when he was delayed by deep snow which made the road temporarily impassable (*Ballentine* v. *Railroad*, 40 Mo. 491; *Breddon* v. *The Railway Co.*, 28 L. J. Ex. 51; 32 L. T. 94); or the washing away of a bridge over a stream, which it was necessary for the carrier to cross, by a freshet.   (*Vicksburg etc. R. R. Co.* v. *Ragsdale*, 46 Miss. 458.) . . . . So a railroad company will be excusable for delay in the delivery of goods, when, having running powers upon another road, it is obstructed by the negligence of the latter. (*Livingston* v. *New York etc. R. R. Co.*, 5 Hun, 562; *Taylor* v. *Railway Co.*, L. R. 1 Com. P. 385; Hutchinson on Carriers, sec. 331.)

The measure of liability of a common carrier of merchandise in case of its loss or injury is very different from that imposed upon him for delay in transporting and delivering such merchandise.   In the former case he is liable for its value in any event, except from some inherent weakness, defect, or vice, or from the spontaneous action of the property itself, or the act of a public enemy, or the act of the law, or "any irresistible

CI. CAL.—13

superhuman cause." (Civ. Code, sec. 2194.) While for delay he is, as before quoted, only liable for a want of "ordinary care and diligence."

Railroad companies may bind themselves by contract not only to convey over their own but over connecting lines, and may bind themselves to deliver goods within a given time (*Pereira* v. *Central Pacific R. R. Co.*, 66 Cal. 92); but in the absence of such contract, express or implied, they are only bound to transport them to the termini of their own lines and to deliver them to the connecting carrier for transportation to their final destination, and that within a reasonable time. (Hutchinson on Carriers, secs. 102, 103 a, 145–159 b, 154, and cases cited.)

The English courts hold that where goods are delivered to a railway company, to be transported beyond the terminus of its line by a connecting company, the presumption is that the company receiving them is liable for loss, injury, or delay occurring beyond its own line. *Muschamp* v. *Lancaster etc. Ry. Co.*, 8 Mees. & W. 421, is the leading English case upon this question.

The rule as enunciated in that case was that when the carrier accepts for carriage goods directed to a destination beyond its own route, it assumes, by the very act of acceptance, in the absence of any express contract on the subject, the obligation to transport them to the place to which they may be directed.

This rule has been steadily adhered to in the English courts. On the other hand, the majority of the American courts have held that in the absence of any other contract than that implied by an acceptance of the goods for carriage, the obligation of the carrier extends only to the end of his route, and a delivery there to the next connecting carrier to further or complete the carriage, and that in order to be bound there must be a positive agreement, express or implied, extending the liability. (*Nutting* v. *Connecticut etc. R. R. Co.*, 1 Gray, 502; *Gray* v. *Jackson*, 51 N. H. 9, and cases cited.) From the review of the cases in *Gray* v. *Jackson* it will be seen that

the rule is by no means uniform in this country.   Our Civil Code has, however, settled the question in this state. Section 2201 is as follows: "If a common carrier accepts freight for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier carrying to the place of address, or connected with those who thus carry, and his liability ceases upon making such delivery."

That there was no stipulation on the part of the defendant to be responsible beyond the terminus of its line, and that it expressly limited its liability to its own road is attested by its receipt for the goods, which in such cases amounts to a bill of lading in which, as it might do, it expressly limited its liability to transportation over its own road.   (*Pollard* v. *Vinton,* 105 U. S. 7; Hutchings on Carriers, secs. 121, 122; Civ. Code, sec. 2176.)

The law of the place where the contract is made governs in determining the liability of the carrier, unless the parties at the time of making it had some other law in view.   (*Liverpool etc. Steam Co.* v. *Phenix Insurance Co.,* 129 U. S. 397; *In re Missouri Steamship Co.,* L. R. 42 Ch. Div. 321; *Hazel* v. *Chicago etc. Ry. Co.,* 82 Iowa, 477; *Fonseca* v. *Cunard Steamship Co.,* 153 Mass. 553.)

There are exceptions to this rule founded upon the supposed intention of the parties, gathered from circumstances surrounding the transaction.   (*Ryan* v. *M. K. & T. R. R. Co.,* 65 Tex. 13.)

Thus much is said to indicate that the question is not overlooked.   The cause, so far as can be determined from the record, was tried upon the theory that the law of California is applicable.   There is no suggestion that the law of Missouri, where the contract for transportation was made, was put in evidence.

Under such circumstances we are not at liberty to assume as a fact that the state of Missouri has a special statute on the subject, but must presume as a question of law that the law of that state is the same as our own.

(*Norris* v. *Harris*, 15 Cal. 226; *Hill* v. *Grigsby*, 32 Cal. 56; *Taylor* v. *Shew*, 39 Cal. 540; *Brown* v. *San Francisco Gas Light Co.*, 58 Cal. 426; *Marsters* v. *Lash*, 61 Cal. 622; *Shumway* v. *Leakey*, 67 Cal. 458.)

Judged by our own statute and by the lawful limitation which defendant might and did embrace in its bill of lading, it was bound to transport to Albuquerque, and deliver to the Atlantic and Pacific connecting road, within a reasonable time, plaintiff's goods.

This it is shown to have done, except as it was prevented without fault of its own by the inability of the Atlantic and Pacific to receive them when they reached the terminus of defendant's line. That the delay was caused upon the Atlantic and Pacific road by act of God, or "irresistible superhuman cause," is, we think, clearly established. The scintilla of evidence to the contrary is not sufficient to establish a substantial conflict; but waiving this question, the negligence, or want of it, on the part of the connecting road, is not one for which this defendant, under its contract, and the statute can be held liable.

It follows that the evidence is insufficient to justify the verdict, and it is against law.

The judgment and order appealed from should be reversed and a new trial ordered.

HAYNES, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed, and a new trial ordered.

McFARLAND, J., DE HAVEN, J., FITZGERALD, J.