## COLFAX MOUNTAIN FRUIT COMPANY, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

RAILROAD COMPANIES—CARRIAGE OF FRUIT—POWER TO CONTRACT—CONTIN-UOUS PASSENGER TRAIN SERVICE BEYOND TERMINUS.—A railroad company has power to contract to carry fruit by continued passenger train service over its own and connecting lines to a place of destination beyond the terminus of its own route.

ID.—SHIPPING ORDER—CONSTRUCTION OF CONTRACT—AGREEMENT TO FORWARD FRUIT TO DESTINATION NAMED—THROUGH FREIGHTS—LIMITATION OF CAR-RIER'S LIABILITY—INJURY FROM DELAY UPON CONNECTING LINE—ACTION FOR BREACH OF CONTRACT.—A contract in the form of a shipping order, made between the shippers and the Southern Pacific Company, upon one of its printed blanks used for regular freight service, to forward fresh fruit loaded in a Union Pacific car to Ogden Station, addressed to a firm in New York, with an agreement for through freight to that city, and concluding with the words: "Care C. & N. W. via Erie Dis-patch, New York. Passenger train service. U. P. 32,009. Agent Southern Pacific Company will please forward, subject to conditions and agreements indorsed hereon," and bearing the following printed indorsement: "That the company agrees to forward the property to the place of destination named: but its responsibility as a common carrier is to cease at the station where the freight leaves this road, where the property is to be delivered to connecting roads or carriers," is to be construed as a special contract for continuous passenger train service of the loaded fruit-car to New York, and the limitation of the carrier's liability beyond its own line does not affect an action not brought upon such liability, but brought against it by the shippers to recover damages for breach of the special contract, on account of delay in transmission of the car upon one of the connecting lines, causing injury to the fruit.

ID.—AGREEMENT TO "FORWARD" FRUIT—MEANING OF CONTRACT.—The word "forward," used in the agreement to forward the fruit, is to be under-stood in the same sense throughout the contract; and inasmuch as the agreement that the fruit was to be "forwarded to Ogden" necessarily imported an agreement to carry or transport it to that place, so also the agreement "to forward the property to the place of destination" is to be understood as using the word "forward" in the same sense, and not in its technical or commercial sense, as putting the carrier in the position of a forwarder; and taking the agreement to forward the fruit, in connection with the agreement for passenger train serv-ice, and with the address, specified route, and place of destination of the fruit, the language employed in the contract imports an agreement to transport and carry the fruit through to New York by passenger train service.

ID.—REQUEST FOR PASSENGER SERVICE OVER CONNECTING LINE—IMPLIED CON-TRACT—INSTRUCTIONS—EXPRESS CONTRACT.—The contract does not import

that the Southern Pacific Company should merely request passenger service over the Union Pacific and other connecting lines, and the law demanded no such request; but its implied contract demanded that it should deliver the fruit to the Union Pacific Company with instructions to further transport it, and there was no implied, but an express, contract that the fruit should have passenger train service thereafter.

Id.—Pleading—Variance—Stipulated Terms of Contract—Waiver of Objection—Review upon Appeal.—Where no objection was made in the trial court in any stage of the proceeding to a variance between the complaint and the stipulated terms of the contract agreed upon by the parties at the trial, a judgment for the plaintiff will not be reversed upon appeal on account of such variance.

APPEAL from a judgment of the Superior Court of Placer County.   J. E. Prewitt, Judge.

The facts are stated in the opinion of the court.

Foshay Walker, for Appellant.

Ben. P. Tabor, and Charles Tuttle, for Respondent.

GAROUTTE, J.—This is an action to recover damages. The case was tried upon an agreed statement of facts, and judgment went for plaintiff. This appeal is prosecuted from such judgment.

The important question presented here for consideration is: Does the judgment follow the findings of fact? And the determination of that question is dependent upon the construction to be given a certain contract entered into between the parties to the action. This contract was in the form of a shipping order, made out by plaintiff, and the parts thereof material for our consideration are as follows:

"Shipping Order, Southern Pacific Company.
"Colfax Station, October 24, 1890.

"Delivered this day by the undersigned to the Southern Pacific Company the property herein described, in apparent good order, except as noted, to be forwarded with as reasonable dispatch as its general business will permit, to Ogden *Station, and there delivered in like good order, . . . . on payment of charges, subject to the following conditions and agreements indorsed hereon:

"Consignee, Marks, and Destination, Sgobel & Day, New York."

(Here follows a description of the property, consisting of fresh fruit.) "Care C. & N. W., via Erie Dispatch, New York. Passenger train service, U. P. 32,009. Agent Southern Pacific Company will please forward, subject to conditions and agreements indorsed hereon.

"(Signed)                                                C. M. F. CO., Shippers.

"(*) When freight is destined off or beyond the line of Southern Pacific Company agents will be careful to note that the name here inserted is the station at which freight leaves the road."

This printed contract, at the time of being signed and delivered by plaintiff to defendant, had indorsed upon the back thereof, among other printed conditions, the following: "That the company agrees to forward the property to the place of destination named; but its responsibility as a common carrier is to cease at the station where the freight leaves this road, when the property is to be delivered to connecting roads or carriers." It seems that the characters "U. P. 32,009" meant Union Pacific Car No. 32,009.

Defendant transported the car in question by passenger train over its road to Ogden, and there delivered it to the Union Pacific Railway Company, the next connecting carrier, with a request that the last-named company "and its connection between Ogden and New York city should, until the arrival of said car at final destination, accord to it passenger train service." After delivery to the Union Pacific Company—but on what line does not appear—delay occurred in the transmission of the car, so that it was three days overdue on arrival at New York, and, in consequence, the fruit suffered decay, and was sold at a loss to plaintiff. This loss forms the basis of the judgment rendered.

It is contended by plaintiff that by the contract, which has been substantially set forth, defendant undertook to furnish passenger train service for the car of fruit from Colfax to New York, and that the connecting lines were its agents for this purpose. It is claimed by defendant that under the contract, upon delivery of the car of fruit at Ogden to the Union Pacific Company with instructions for continued passenger train service, defendant's obligation under the contract terminated. There is no question but that the defendant had the power to enter into a contract with plaintiff, whereby it bound itself to carry this fruit from Colfax

to New York city by passenger train service. Such is the law everywhere, and this principle is directly recognized by section 2201 of the Civil Code, which in effect provides that the liability of a common carrier who accepts freight for a place beyond his usual route ceases upon delivery of the freight at the end of his route in that direction to some other competent carrier carrying to the place of address, or connected with those who thus carry, unless he stipulates otherwise.

There is nothing in the contract justifying the construction that its terms demanded "passenger service to Ogden, and a request simply to connecting carriers for passenger service thereafter." A shipper desirous of through passenger train service would hardly be satisfied with such a contract. By that construction there would be no obligation upon the part of the Union Pacific Company to give passenger service, and its refusal to furnish it would create no liability either against it or defendant. The defendant's implied contract demanded that it deliver the fruit to the Union Pacific, with instructions to further transport it, but there would be no implied contract that this fruit should have passenger train service thereafter. The law demanded no such request from defendant. The contract upon its face contains no covenant that a request for passenger train service should be made by defendant of the Union Pacific Company. As to such service, the contract before us bears but one of two constructions: either it was an agreement upon the part of the defendant to furnish such service to Ogden, or an agreement to furnish such service to New York city.

The contract is a printed form, and is evidently used for regular freight service. It is also apparent that it is used for all freight service, whether or not the freight be transported beyond its own lines of road. For these reasons apparent inconsistencies arise as to some of its provisions.

If the defendant agreed to transport this fruit to New York, there can be no question but that it also agreed to give it passenger train service; for that the fruit was to have such service as far as the defendant agreed to carry it is and must be conceded. The contract is unilateral in form, and in three distinct and separate places therein we find an agreement as to the transportation of this freight: 1. Defendant agreed to forward it to Ogden sta-

tion from Colfax, "with as reasonable dispatch as its general business would permit"; 2. Defendant agreed to forward it "subject to conditions and agreement indorsed hereon"; 3. The defendant agreed to "forward the property to the place of destination named." The first provision is an agreement to carry the fruit from Colfax to Ogden; the second provision is clearly one to carry the fruit from Colfax to one of two places—Ogden or New York; the third provision is one to carry the fruit from Colfax to Ogden, or from Colfax to New York; or it is an agreement to forward the fruit from Ogden to New York.

It will be observed that the verb "carry," or "transport," is not used in this contract, but that the verb "forward" is used in the three provisions cited. It cannot be questioned that the defendant in agreeing to forward the fruit, as the word is used in the first two instances found in the contract, stood in the position of a common carrier toward the plaintiff, and not in the position of a "forwarder." It must be true that it was treating with plaintiff in that capacity; and it is equally true that by the use of the verb "forward" it was understood by both parties that the defendant was to carry or transport the fruit. This is manifest when it is considered that the route from Colfax to Ogden is its own, and that the property was to be taken over that route by it. Hence, as a common carrier, it agreed to "forward" the fruit over its own road; in other words, carry or transport it. This brings us to a consideration of the meaning of the word "forward" as used in the last provision cited. When contracting parties use the same word three times in a contract, and in the first two instances its meaning is plain, other things being equal, it should be given the same meaning when used the third time. Any doubt or ambiguity as to the intention of the parties in the use of the word under such circumstances should be solved in favor of the construction conceded in other portions of the contract. Especially should such construction obtain when the word is a verb, and in each instance purports to deal with the same property. It follows that if the verb "forward," as used in the contract, means to carry or transport in two instances, it not being apparent that any other meaning was intended when used a third time, we will give it the same meaning when so used. Upon such construction the last clause of the contract we have quoted binds the defendant to carry

or transport the fruit to "the place of destination named," and that place was New York.   It certainly cannot be contended that it was Ogden station, for it was shipped to New York.   By the contract it was consigned to Sgobel & Day, New York.   The contract, in terms, declares its "destination" to be New York; freight was agreed to be paid upon it to that city, and the particular common carriers that were to transport it to that point are set forth upon the face of the contract.

The provision of the contract which we have just been considering, quoted in full, is as follows:   "That the company agrees to forward the property to the place of destination named, but its responsibility as a common carrier is to cease at the station where the freight leaves this road, when the property is to be delivered to connecting roads or carriers."   Taking this provision alone, its natural and reasonable construction is an agreement to carry and transport this car of fruit from Colfax to New York.   It is plain that the word "forward" is not used in its technical, commercial sense, and that by its use the defendant did not intend to assume the duties of a "forwarder."   In the first place, the defendant, as a common carrier receiving property consigned to New York, was bound by implied contract to forward that property from Ogden; hence the provision from such standpoint has no force.   Second, if the agreement was simply to "forward" from Ogden to New York, all the latter portion of the provision has no force and effect; for, if the defendant was acting simply as a "forwarder" of freight, he would assume no liability as a common carrier after the fruit left Ogden.   Section 2101 of the Civil Code so provides in terms.   Third, this clause of the provision clearly applies to all freight handled by defendant, whether that freight be consigned to a point upon or beyond its route; hence the word "forward" must necessarily be deemed to be used in the sense of transport or carry.   If the provision be construed as alone referring to the forwarding of freight by defendant over another route, it would be inharmonious and inconsistent with the clause which follows, wherein it is provided that when the property is to be delivered to connecting roads or carriers defendant's liability as a common carrier ceases.   By this clause of the provision it is clearly implied that property is "forwarded" to the place of destination when not delivered to connecting roads or

carriers.   For these reasons also we conclude that this provision of the contract contains an agreement to transport and carry this freight from Colfax to New York.   The clause following, to the effect that it shall be relieved from liability as a common carrier while the goods are in transit between Ogden and New York, in no way affects the question under consideration, for the liability here sued upon is not the liability of a common carrier, but a liability incurred for a breach of a special contract.   By this conclusion the three provisions of this contract we have had under consideration are consistent and harmonious, and due force and effect are given to each.   The defendant's contract being to carry this freight to New York, it necessarily follows that it was to give it passenger train service to that point.   It failed to render such service, hence there was a breach, and a loss resulted to plaintiff by reason of that breach.

The contract between the parties, as stipulated at the trial, varied from that alleged in the complaint, but it seems no objection was made by the defendant on this ground in the court below at any stage of the proceeding, and for this reason we will not now reverse the judgment upon the ground of such variance.   We find no substantial error in the record.

For the foregoing reasons the judgment is affirmed.

Van Fleet, J., Harrison, J., Temple, J., and Henshaw, J., concurred.

McFarland, J., dissented.