CINCINNATI, N. O. & T. P. RY. CO. v. N. K. FAIRBANKS & CO.

(Circuit Court of Appeals, Sixth Circuit. November 28, 1898.)

No. 601.

1. CARRIERS OF GOODS — CONTRACT OF CARRIAGE — LIABILITY OF CONNECTING LINES.

   A carrier receiving goods billed for carriage beyond its own line is presumptively bound only to carry such goods to the end of its own line on their route, and to safely deliver them to the connecting line, to be forwarded; and it is not liable for loss or damage occurring after such delivery, except by special contract.

2. SAME—CONSTRUCTION OF BILL OF LADING.

   A bill of lading for goods to be carried over several connecting lines, by which the initial carrier undertakes, for itself and the connecting carriers named, "severally and not jointly," that each carrier on the line shall safely carry and deliver the goods received to the next succeeding carrier, until they reach their destination, expressly stipulating that the liability of each as to the goods destined beyond its own line shall terminate on their delivery to the next succeeding carrier, and that in case of loss or damage to the goods the carrier in whose actual custody they are at the time of such loss or damage shall alone be responsible therefor, although it names a through rate, constitutes a several contract between the owner of the goods and each carrier accepting them thereunder in the course of shipment, and renders any carrier in whose custody they are at the time of loss or damage liable directly to such owner therefor, as a carrier, and not merely for negligence as agent of the initial carrier.

3. SAME—RAILROADS—DEFECTIVE CARS.

   It is the duty of a railroad to furnish fit and suitable cars for the carriage of goods, and it cannot avoid responsibility for loss or damage caused by defective cars by devolving upon the shipper the duty of inspecting or selecting the cars in which his goods are to be shipped.

4. SAME—OWNERSHIP OF CARS USED.

   The responsibility of a railroad carrier is the same whether the goods are carried in its own cars or those of another.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

This is an action by N. K. Fairbanks & Co. against the Cincinnati, New Orleans & Texas Pacific Railway Company to recover for goods lost in shipment. There was a judgment for the plaintiff, and defendant brings error.

Harmon, Colston, Goldsmith & Hoadly, for plaintiff in error.

Robert Ramsey, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge. This is an action against a railway company to recover the value of a shipment of cotton-seed oil lost while in course of transportation over the railway of the plaintiff in error.

There was a direction to find for the defendant in error. It is now said that this instruction was erroneous, and that plaintiff in error was not liable as an insurer against all accident and loss due to human agency, but only for negligence, and that there was no evidence of negligence. It may be conceded that, if the plaintiff in error is not liable as a common carrier, but only for negligence, the judgment must be reversed.

1. It is said that these goods were shipped under a through bill of lading issued by another carrier, by which it undertook to safely deliver the goods at their destination, and that plaintiff in error was an intermediate carrier, carrying the goods only as agent for the initial carrier, and having no contractual relations with the owner, and liable only, if at all, for a loss through negligence. This contention is not sustained by the facts. This oil was contained in four cars, called "tank cars"; cars peculiarly adapted to the shipment of oil in bulk. It was received at Atlanta, Ga., the place of shipment, by the East Tennessee, Virginia & Georgia Railway Company, consigned to Chicago, Ill. The initial carrier owned and operated a line of railroad, extending in the direction of Chicago, only between Atlanta and Chattanooga, Tenn. At the latter point the line of railway operated by plaintiff in error began, and continued the route in the direction of Chicago. The first carrier issued a through bill of lading for each of said tank cars. Each bill was entitled:

"Shippers are requested to read this contract.

"East Tennessee, Virginia and Georgia Railway Company and Connections.

"Through Bill of Lading.

"The right to compress cotton reserved in this bill of lading. This receipt to be presented without alteration or erasure."

The following are those parts of the printed bill which have most bearing upon its construction in the matter now under consideration:

"Atlanta, Ga., 5/4, 1889.

"Received by the East Tennessee, Virginia and Georgia Railway Company, of Southern Cotton-Oil Company, under the contract hereinafter contained, the property mentioned below, marked and numbered as per margin, in apparent good order and condition; contents and value unknown.

"Consigned to N. K. Fairbanks & Co., at Chicago, Ill. To be transported by the East Tennessee, Virginia and Georgia Railway to ———; thence by connecting rail or other carrier, via ———, until they reach the station or wharf nearest their ultimate destination. If their ultimate destination be beyond the point for which rates are named, they may, by the connecting carrier nearest such ultimate destination, be delivered to any other carrier, to be transported to such ultimate point; and the carrier so selected shall be regarded exclusively as the agent of the owner or consignee. Each carrier shall be bound (subject to limitations and exceptions contained in this contract) to deliver said goods in the same order and condition as that in which it received them; and the ultimate carrier to deliver them at its station or wharf to his consignee or his assigns, if called for by him or them, as in this contract provided,—he or they paying freight and charges thereon, and average, if any. It is mutually agreed, in consideration of the rates herein guarantied, that the liability of each carrier, as to goods destined beyond its own route, shall be terminated by proper delivery of them to the next succeeding carrier. * * * The several carriers shall have a lien upon the goods specified in this bill of lading for all arrearages of freight and charges due by the same owners or consignees on other goods. In case of loss, detriment, or damage to the goods, or delay in the transportation thereof, imposing any liability hereunder, the carrier in whose actual custody they were at the

time of such loss, damage, detriment or delay shall alone be responsible therefor. The receipt of any carrier for the goods shall be prima facie evidence of the condition in which he received them, in a suit against any other carrier. * ˟ * This bill of lading is signed for the different carriers who may be engaged in the transportation, severally, not jointly; and each of them is to be bound by, and have the benefit of, all the provisions thereof, as if signed by it, the shipper, owner, and consignee. The acceptance of this bill of lading is an agreement on the part of the shipper, owner, and consignee of the goods, to be bound by all of its stipulations, exceptions, and conditions, as fully as if they were all signed by such shipper, owner, and consignee. This contract is executed and accomplished, and the liability of the company as common carrier thereunder terminates, on the arrival of the goods or property at the wharf, station, or depot to which this bill of lading contracts to deliver and the carrier will be responsible thereafter only as warehouseman. This bill of lading shall have the effect of a special contract not liable to be modified by a receipt from or of an intermediate carrier."

All of these bills are signed by "M. Taylor, Agent," and conclude with a blank form, filled in in part, as follows:

| Cents Per One Hundred Pounds. | | | | | | | |
|---|---|---|---|---|---|---|---|
| If Class 1 | If Class 2 | If Class 3 | If Class 4 | If Class 5 | If Class 6 | If Special | |
| | | 35 | | | | | |

Subject to differences in classification of connecting carriers.

Charges advanced $......... .. ........... ................................

In witness whereof bills of lading, all of this tenor and date, have been signed. one whereof being accomplished, the others to stand void.
Rates from Atlanta, Ga., to Chicago, Ill.
Names by........................Agent.
Weights, rates, and classification subject to correction.

| Marks and Numbers. | No. Pk'gs. | Description of Articles. | Weight. |
|---|---|---|---|
| A. C. O. Co.   7027. | | One tank C. S. Oil...................... Via E. T. V. & G., C. N. O. & T. P., C. H. & D., L. N. A. & C. R. R. | 34,350 lbs. |

M. Taylor, Agent.

To support the argument that these contracts should be construed as engagements by the initial carrier for the safe carriage of these goods to their ultimate destination, although beyond the end of its own line, counsel have cited Railroad Co. v. Hasselkus, 91 Ga. 382, 17 S. E. 838, as peculiarly applicable; being a determination of a question much the same by the supreme court of Georgia, the state within which these contracts were made. They have also cited, as in harmony with the law as declared by the Georgia court, the cases of Gordon v. Railway Co., 34 U. C. Q. B. 224; Davis v. Jacksonville Southeastern Line, 126 Mo. 69, 28 S. W. 965; Cutts v. Brainerd, 42 Vt. 566; and Railway Co. v. Merriman, 52 Ill. 123. Most, if not all, of these cases follow the rule of Muschamp v. Railway Co., 8 Mees. & W. 421, that the mere acceptance of goods implies an agreement to carry them to their final destination, whether beyond the line of the carrier or not. That rule has not been followed by the majority of the courts of this country, and was expressly repudiated by the supreme court of the United States in

Myrick v. Railroad Co., 107 U. S. 102, 106, 107, 1 Sup. Ct. 425. The rule applicable was thus stated by the court:

"A railroad company is a carrier of goods for the public, and as such is bound to carry safely whatever goods are intrusted to it for transportation, within the course of its business, to the end of its route, and there deposit them in a suitable place for their owners or consignees. If the road of the company connects with other roads, and goods are received for transportation beyond the termination of its own line, there is superadded to its duty as a common carrier that of a forwarder by the connecting line; that is, to deliver safely the goods to such line,—the next carrier on the route beyond. This forwarding duty arises from the obligation implied in taking the goods for the point beyond its own line. The common law imposes no greater duty than this. If more is expected from the company receiving the shipment, there must be a special agreement for it. This is the doctrine of this court, although a different rule of liability is adopted in England and in some of the states. As was said in Railroad Co. v. Manufacturing Co., 16 Wall. 318–324: 'It is unfortunate for the interests of commerce that there is any diversity of opinion on such a subject, especially in this country; but the rule that holds the carrier only liable to the extent of its own route, and for the safe storage and delivery to the next carrier, is in itself so just and reasonable that we do not hesitate to give it our sanction.' This doctrine was approved in the subsequent case of Railroad Co. v. Pratt, 22 Wall. 123, although the contract there was to carry through the whole route. Such a contract may, of course, be made with any one of different connecting lines. There is no objection in law to a contract of the kind, with its attendant liabilities. See, also, Insurance Co. v. Railroad Co., 104 U. S. 146. The general doctrine, then, as to transportation by connecting lines, approved by this court and also by a majority of the state courts, amounts to this: That each road is only bound, in the absence of a special contract, to safely carry over its own route and safely to deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence."

Looking to all parts of the contracts here involved, we can reach no other conclusion than that the initial carrier undertook, for itself and its connecting lines in the route, "severally and not jointly," that each would carry safely to the point of junction with the next succeeding carrier, and then deliver to it, and that each should be liable exclusively for any loss while in its custody. The blanks in the first clause of the contract set out above, showing the point to which the East Tennessee, Virginia & Georgia Railway Company undertook to carry, and the connecting carrier to whom it undertook to deliver, were possibly not filled in for want of space. But at the foot of the contract, under the larger space for "Description of Articles," the route and names of connecting carriers are stated. This, in connection with the clear expression of an intention to engage only for the safe carriage over its own line, clears up any doubt which might arise from the giving of a through rate upon goods destined to a point beyond its own line. In this day of advanced methods in the carriage of goods, very little significance can be attached to the mere giving of a through rate for a shipment necessarily passing over the line of more than one carrier. The presumption is rather that it undertook to contract for itself and the connecting carrier, severally and not jointly. This purpose is very clear upon the bills issued in respect to this shipment. The plaintiff in error has not repudiated the contract made for it by the initial carrier. On the contrary, it has

sought to avail itself of a modification of its common-law liability as an insurer by an insistence upon nonliability for "the breaking of an axle," as an "accident to machinery," within the meaning of the provision exempting the carrier from loss due to the "breaking of machinery" without negligence.    This defense we passed upon under an appeal disposed of at a former term of this court.    Fairbanks v. Railroad Co., 47 U. S. App. 744, 26 C. C. A. 402, and 81 Fed. 289.    Our conclusion upon this point is that there is privity of contract between plaintiff in error and the owner of the goods lost, and that it is liable as a common carrier, unless relieved by some other matter.

2. It is next urged that the plaintiff in error was relieved from the rigid rule of the common law which makes it an insurer against any loss not due to an act of God or the public enemy, by reason of the fact that this loss was due to a defective axle in one of the tank cars in which this oil was being carried, and that that car, as well as the others in which this oil was being transported, was "selected" by the shipper, the Southern Cotton-Seed Oil Company.    Precisely what is implied by the term "selected" is not clear.    Certain it is that there is no evidence that these tank cars were ever inspected or approved by the shipper. Nor is it to be conceded that the carrier could avoid responsibility as a carrier by devolving upon the shipper the duty of inspecting or selecting the cars in which his goods are to be shipped.    The duty of the carrier is to furnish fit and suitable cars for the carriage of goods. Railroad Co. v. Dies, 91 Tenn. 177, 18 S. W. 266; Railroad Co. v. Davis, 159 Ill. 53, 42 N. E. 382.    But this question is not raised by the evidence in this record.    These tank cars did not belong to the shipper. They were owned by a company called the "American Cotton-Seed Oil Company."    Neither were they hired by the shipper, or in any sense furnished by it.    The evidence is meager upon this question.    It is only shown that these and other like cars were owned by the American Cotton-Seed Oil Company, and that that company furnished them to railroad companies, charging the usual mileage rate allowed for foreign cars.    It is shown that these cars were "delivered to" the plaintiff in error, at Cincinnati, April 15, 1889, and that that company "delivered" them to the East Tennessee, Virginia & Georgia Railway Company, at Chattanooga, April 21, 1889, and that the latter company "returned" the cars to the plaintiff in error, "loaded," at Chattanooga, May 5, 1889, and that the plaintiff in error paid the owner of the cars three-fourths of a cent per mile "for the use of three cars running over its road, transporting this oil."    This is all the proof discoverable which bears upon this claim that the shipper "selected" these cars.    We see nothing in the facts which distinguish this case from the ordinary use by one company of the cars of another.    The responsibility of the carrier is the same, whether the goods be carried in its own cars or those of another. Judgment affirmed.