[L. A. No. 2256. Department One.—June 25, 1909.]

JACOB SCHWARTZ, Respondent, v. PANAMA RAILROAD COMPANY (a Corporation), Appellant.

Common Carriers—Contract to Carry Beyond Terminus of Line—Acceptance of Freight—Obligation of Initial Carrier.—Prior to the taking effect of the act of Congress known as the Hepburn Act, it was the rule, prevailing in most of the United States, and embodied in section 2201 of the Civil Code of this state, that the mere acceptance of freight by a common carrier for a place beyond the terminus of his route, imposes on him, unless he stipulates otherwise, only the obligation to deliver it at the end of his route in that direction to some other competent carrier carrying to the place of address, or connected with those who thus carry, and his liability as a carrier ceases upon making such delivery.

Id.—Law of New York—Presumption of Similarity of Laws.—The foregoing rule is established by the decisions of the courts of the state of New York; and in an action in this state on a contract of carriage there made, it must be assumed, in the absence of evidence as to what the statutory provisions of that state in relation to carriers are, that its law on that subject is the same as the law of this state.

Id.—Carrier May Contract for Liability beyond Terminus.—A carrier may so contract to carry to some point beyond the end of his route as to be liable for delivery at such point, and when he has so contracted, all connecting lines are his agents, for whose default he is responsible.

Id.—Carriage from New York to Los Angeles—Connecting Carriers—Construction of Bill of Lading.—The defendant, owning and operating a line of steam vessels between the port of New York and the port of Colon in the Republic of Panama, and also a line of steam railroad from the port of Colon across the Isthmus of Panama to the port of Panama, accepted from the plaintiff, in the city of New York, certain goods for carriage to Los Angeles, California, under a bill of lading, the material provisions of which were as follows:—

"Panama Railroad Co.

Panama Railroad S. S. Line

"Marks and Numbers.

"Freight from New York to Los Angeles, Cal.

"3164 lbs. at $180.

"New York...................190....     No......

"Received by the Panama Railroad Company . . . under the contract hereinafter contained, the property mentioned below . . . Consigned to Jacob Schwartz at Los Angeles, to be transported by steamship Seguranca . . . to the port of Colon, and there . . . if destined beyond, to be there delivered to connecting carrier and so on by one connecting carrier to another, until they reach the station or port nearest to the ultimate destination. If their ultimate destination be beyond the point for which rates are named, as per margin, they may by the connecting carrier nearest to such ultimate destination, be delivered to any other carrier, to be transported to such ultimate point; and the carrier so selected shall be regarded exclusively as the agent of the owner or consignee. . . . Every carrier is liable to the preceding carrier for all accrued charges; and in the event of loss of the property after transfer from one carrier to another, the carrier having the property in charge when the loss occurs shall have a lien on the remaining property, if any, for all such advances. . . . It is mutually agreed that the liability of each carrier, as to goods destined beyond its own route, shall be terminated by proper delivery of them to the next succeeding carrier. This bill of lading is signed for the different carriers who may be engaged in the transportation, severally, not jointly, and each of them is to be bound by and have the benefit of all the conditions thereof as if signed by it, the shipper, owner and consignee." Among the conditions printed on the back of the contract was one exempting such carrier from any liability for certain kinds of articles unless their nature and value were expressed, and for any loss or damage "arising from fire . . . from any cause, on land or on water," and one that "in case of loss, detriment or damage to the goods . . . imposing any liability hereunder, the carrier in whose

actual custody they were at the time of such loss, damage, detriment or delay, shall alone be responsible therefor." *Held*, that under such contract there was no stipulation on the part of the initial carrier to deliver the goods at Los Angeles, or to be responsible therefor beyond the terminus of its line, and that its liability ceased upon its delivery to a connecting carrier at such terminus.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

Aylett R. Cotton, and Anderson & Anderson, for Appellant.

Goldberg & Meily, for Respondent.

ANGELLOTTI, J.—This is an appeal from a judgment in favor of plaintiff and from an order denying defendant's motion for a new trial, in an action brought to recover damages for the failure of defendant to comply with the terms of an alleged contract of carriage.

The material facts established by undenied allegations of the complaint or evidence as to which there was no conflict were as follows: Defendant is a corporation organized, existing, and doing business as a common carrier for hire of goods, wares, and merchandise, under and by virtue of the laws of the state of New York. It owns and operates a line of steam vessels sailing between the port of New York and the port of Colon in the republic of Panama, and also a line of steam railroad connecting with its line of steamers at Colon, and thence extending across the Isthmus of Panama to the port of Panama, where its route as a common carrier terminates. The Pacific Mail Steamship Company, a corporation, is a common carrier of goods, operating a line of steam vessels from Panama to San Francisco, California, and the Pacific Coast Steamship Company, a corporation, is a common carrier of goods, operating a line of steam vessels from San Francisco to the ports adjacent to Los Angeles, California. In April, 1905, plaintiff, at the port of New York, delivered to defendant for carriage certain machinery for the manufacture of soda water and carbonated waters, of which he was the owner. This

machinery was then contained in ten packages, each bearing upon it in plain and visible manner, the initials and address of plaintiff as consignee, at Los Angeles, California. Defendant accepted the same for carriage, giving to plaintiff a bill of lading therefor. The provisions thereof material here are as follows:—

"Panama Railroad Co.

"Panama Railroad S. S. Line.

"R. L. Walker, Traffic Manager, 24 State Street,

"New York.

"Marks and Numbers.

"a|d—J.S.

"Freight from New York to Los Angeles, Cal.

"3164 lbs. at $180.

"New York, ...............190....      No. ......·

"Received by the Panama Railroad Company of L. Furtenberg, under the contract hereinafter contained, the property mentioned below, marked and numbered as per margin, in apparent good order and condition (contents and value unknown), viz.:

"3 stands

"3 fountains

"3 coolers

"1 box of parts

"10 pkgs.

"One cooler rim broken.

"Consigned to Jacob Schwartz at Los Angeles, to be transported by steamship Seguranca appointed to sail Apr. 17, 1905, or by any other or succeeding steamer or vessel, whether belonging to said company or any other owner, to the *Port of Colon*, and there, . . . if destined beyond, to be there delivered to *connecting carrier* and so on by one connecting carrier to another, until they reach the station or port nearest to the ultimate destination. If their ultimate destination be beyond the point for which rates are named, as per margin, they may by the connecting carrier nearest to such ultimate destination, be delivered to any other carrier, to be transported to such ultimate point; and the carrier so selected shall be regarded exclusively as the agent of the owner or consignee. . . .

"Every carrier is liable to the preceding carrier for all accrued charges; and in the event of loss of the property after transfer from one carrier to another, the carrier having the property in charge when the loss occurs shall have a lien on the remaining property, if any, for all such advances.

"It is mutually agreed that the liability of each carrier, as to goods destined beyond its own route, shall be terminated by proper delivery of them to the next succeeding carrier. This bill of lading is signed for the different carriers who may be engaged in the transportation, severally, not jointly, and each of them is to be bound by and have the benefit of all the conditions thereof as if signed by it, the shipper, owner and consignee. . . ."

Certain conditions were printed on the back of this contract. Among them was one exempting such carrier from any liability for certain kinds of articles unless their nature and value are expressed, and for any loss or damage "arising from . . . fire from any cause, on land or on water." Another provision was "in case of loss, detriment or damage to the goods, or delay in the transmission thereof, imposing any liability hereunder, the carrier in whose actual custody they were at the time of such loss, damage, detriment or delay, shall alone be responsible therefor. The receipt of any carrier for the goods shall be *prima facie* evidence of the condition in which he received them, in a suit against any other common carrier."

There was no provision in the contract as to who should be the carriers beyond the end of defendant's route, and the defendant was left free to select such carriers. The charges for freight were not prepaid, but were to be collected from the consignee by the final carrier at the point of destination.

One of these packages, containing parts of the machinery indispensable to the operation of the whole, was carried by defendant to Panama and there delivered by it to the Pacific Mail Steamship Company for further carriage. It was then carried by the latter to San Francisco, where it was delivered to the Pacific Coast Steamship Company for further carriage. It was by the last-named company shipped and loaded on its steam vessel State of California, then lying at a wharf in San Francisco. While so situated, the contents of said package, through the fault, negligence, and wrong of the Pacific

Coast Steamship Company, were so damaged and destroyed by fire occurring in the hold of said vessel that they were rendered wholly worthless, incapable. of use, and of no value whatever.

The remaining nine packages were carried with due diligence by defendant to Panama, and there delivered by it to the Pacific Mail Steamship Company on May 8, 1905, in good order and condition. One of these packages has never reached its destination. The remaining eight packages were never tendered to plaintiff until December 8, 1905, on which date the Pacific Coast Steamship Company did tender them to plaintiff at Los Angeles, but at such time the contents thereof were "rusted, broken, damaged and destroyed, and were incapable of use and of no value whatever, and the plaintiff declined to receive the same."

Upon these facts it is clear that whatever default there was in relation to the contract of carriage occurred after the delivery of the packages by defendant at the end of its route to the Pacific Mail Steamship Company, and was primarily the default of either the latter company or that of the Pacific Coast Steamship Company.

It is conceded that under what is known as the American rule (as distinguished from the English rule) which prevails in most of our states, the mere acceptance of freight by a common carrier for a place beyond his route, imposes on him, "unless he stipulates otherwise," only the obligation to deliver it at the end of his route in that direction to some other competent carrier carrying to the place of address, or connected with those who thus carry, and his liability as a carrier ceases upon making such delivery. This is the rule embodied in section 2201 of our Civil Code (see *Palmer* v. *Atchinson, etc. R. R. Co.*, 101 Cal. 187, [35 Pac. 630].) It is also the rule declared by the decisions in the state of New York, the state in which the shipment was made (see *Condict* v. *Grand Trunk Ry. Co.*, 54 N. Y. 500; *Jennings* v. *Grand Trunk Ry. Co.*, 127 N. Y. 438, [38 N. E. 394]). There was no evidence as to what the statutory provisions of that state in relation to carriers are, and we must therefore assume that the law of New York was the same as our own. (*Palmer* v. *Atchinson etc. Co.*, 101 Cal. 195, [35 Pac. 630]; *Cavallaro* v. *Texas etc. Ry. Co.*, 110 Cal. 348, 357, [52 Am. St. Rep. 94, 42 Pac. 918].) We are

speaking of the situation as it existed prior to the taking effect of the act of Congress, known as the Hepburn Act, [34 Stats. 584; U. S. Comp. Stats. Supp. 1907, p. 892], which provides that the initial carrier receiving goods for transportation from a point in one state to a point in another state, shall be liable for transportation to the point of destination. The shipment here was made prior to the taking effect of this act. Plaintiff's theory, as shown by the allegations of his complaint, which was sustained by the findings of the trial court, is that defendant did "stipulate otherwise"—that by special contract it undertook to deliver the goods at Los Angeles, and that the connecting carriers between Panama and Los Angeles were its agents in the performance of said contract for whose negligence it was responsible. It is everywhere recognized that the carrier may so contract to carry to some point beyond the end of his route as to be liable for delivery at such point, and that when he has so contracted, all connecting lines are his agents, for whose default he is responsible. ( 1 Hutchinson's Carriers, secs. 226 240; *Pereira* v. *Central Pacific R. R. Co.*, 66 Cal. 92, [4 Pac. 988]; *Colfax etc. Co.* v. *Southern Pacific Co.*, 118 Cal. 648, [50 Pac. 775]; *German Fruit Co.* v. *California etc. Co.*, 133 Cal. 426, [65 Pac. 948].) The question here presented is whether defendant did so contract with reference to the shipment made by plaintiff. If any such obligation on the part of defendant existed, it existed solely by reason of the fact that it had assumed it by positive agreement (see 1 Hutchinson's Carriers, secs. 231, 232; *Myrick* v. *Michigan Central R. R. Co.*, 107 U. S. 102, [1 Sup. Ct. 425].)

We are unable to find in the contract in the case at bar the assumption by defendant of any obligation other than the obligation of transporting the goods to the end of its route, and there delivering them to some other competent carrier carrying to the place of address or connecting with those who thus carried. So far as the terms of the contract relate to this matter they are perfectly clear and certain and susceptible of no other construction. Their effect was, as stated by Judge Lurton in an opinion concurred in by Judges Taft and Clark in *Cincinnati etc. Co.* v. *Fairbanks Co.*, 90 Fed. 467, [33 C. C. A. 611], where a very similar contract was under consideration, "that the initial carrier undertook, for itself and its connecting lines in the route, 'severally and not jointly,' that

each would carry safely to the point of junction with the next succeeding carrier, and then deliver to it, and that each should be liable exclusively for any loss while in its custody." It is true that in that case the various connecting routes were specified, but this appears to have been considered material only in view of the fact that the blank in the receipt in which the name of the place to which the goods were to be transported by the initial carrier had not been filled in, thus leaving such point unnamed, and giving some basis for the claim that the initial carrier was to transport to the only other place expressly designated, viz.: the place to which the goods were consigned. In the contract at bar the Port of Colon was expressly named as the point to which the defendant was to transport the goods. It is urged that these words, "Port of Colon" must be disregarded and the contract of shipment construed as if they had not been written and the space left blank, for the reason that the terminus of defendant's route was, in fact, Panama, and defendant's answer admits a contract to transport to the terminus of its route at Panama, in other words, to carry the goods across the isthmus from Colon to Panama. There is no force in this contention. The answer of the defendant admits no more than that, by reason of its ownership and operation of the railroad across the isthmus, it was liable in the matter of the carrying of the goods beyond the point designated in the contract and as far as Panama, the end of the railroad and its route. But whatever the liability of the defendant by reason of the fact that the railroad across the isthmus was a part of its operated route, the Port of Colon was designated by the contract as the point to which it would transport the goods, and at which it would deliver them to a connecting carrier, and this designation cannot be disregarded.

There is absolutely nothing to indicate any intention to assume any obligation beyond the carrying to the end of its route other than the obligation to deliver to a connecting carrier, and the assumption of any additional obligation is expressly repudiated by clear and unambiguous language. The words following the undertaking that the goods shall be delivered to connecting carrier, viz.: "and so on by one connecting carrier to another, until they reach the station or port nearest to the ultimate destination," can mean no more, in the light

of the other provisions of the contract, and especially in the light of the provision that the contract "is signed for the different carriers who may be engaged in the transportation, severally, not jointly," etc., than that the defendant was undertaking for itself and its connecting lines, "severally, not jointly," that each would perform its part of the contract, and stipulating that each should have the benefit of all the conditions thereof. The provision to the effect that if the ultimate destination be beyond the point for which rates are named, they may by the connecting carrier nearest such ultimate destination be delivered to any other carrier to be transported to such ultimate point, which carrier "so selected shall be regarded exclusively as the agent of the owner or consignee" was simply a provision for the protection of the ultimate connecting carrier relating to the disposition of the property at the end of the route covered by the contract, the route for which rates were named, and as to which the carriers to be engaged in the transportation had severally contracted, each for his own portion thereof. We do not see that this provision aids in the determination of the question under consideration. A similar provision was contained in the bill of lading in *Cincinnati etc. Co.* v. *Fairbanks Co.*, 90 Fed. 467, [33 C. C. A. 611]. Nor was it important that the contract contained elaborate and detailed stipulations as to the rights, duties, and liabilities of connecting carriers, the contract being executed by defendant not only for itself, but also for and on behalf of such connecting carriers. The naming of a through freight rate which was not to be prepaid, but of which each carrier was to collect his portion from the next succeeding carrier, and the whole amount of which to be collected by the ultimate carrier from the consignee at the end of the route, has very little significance. None of the elements suggested is necessarily inconsistent with the theory that the defendant was not assuming any responsibility beyond the end of its route (see Moore on Carriers, sec. 475), and when considered in connection with the explicit provisions that "it is mutually agreed that the liability of each carrier, as to goods delivered beyond its own route shall be terminated by proper delivery of them to the next succeeding carrier" and "in case of loss, detriment or damage to the goods, or delay in the transmission thereof, imposing any liability hereunder, the

carrier in whose actual custody they were at the time of such loss, damage, detriment or delay, shall alone be responsible therefor," and the further provision that "this bill of lading is signed for the different carriers who may be engaged in the transportation, severally, not jointly," all of which constitute parts of the contract equally with the provision relied on by plaintiff, are entirely consistent with such theory. The contract was undoubtedly, as claimed by plaintiff, a through contract, but so far as it applied beyond the end of defendant's route, it was a contract clearly and unequivocally entered into by defendant solely on behalf of the connecting carriers who might be engaged in the transportation, and not for itself. It must, therefore, be held that there was no stipulation on the part of defendant to deliver the goods at Los Angeles or to be responsible therefor beyond the terminus of its line, and that its liability as to the goods ceased upon its delivery thereof to the Pacific Mail Steamship Company.

The California cases in which contracts for carriage have been held to be through contracts, imposing on the initial carrier the obligation of carrying through to destination, are all clearly distinguishable from the case at bar. We have examined the various cases cited by learned counsel for plaintiff, and find nothing therein to lead us to doubt the correctness of our conclusion. The question is simply one as to the proper construction of a written contract, the meaning and intent of which appear to us to be entirely clear.

From what we have said it follows that the findings of the trial court as to the undertaking and default of the defendant are not sustained by the evidence.

The judgment and order denying a new trial are reversed.

Sloss, J., and Shaw, J., concurred.

Hearing in Bank denied.